# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT ALAN FRATTA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **NO. 4:13-CV-03438** |
| | § | |
| **LORIE DAVIS, Director, Texas** | § | |
| **Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

---

## REPLY TO RESPONDENT'S ANSWER AND MOTION FOR SUMMARY JUDGMENT; AND CROSS-MOTION FOR SUMMARY JUDGMENT ON CLAIMS ONE AND TWO OF PETITIONER'S AMENDED PETITION.

---

TO THE HONORABLE MELINDA HARMON, U.S. DISTRICT COURT JUDGE:

Petitioner Robert Alan Fratta files this Reply and Cross Motion for Summary Judgment, and would show as follows:

## I.  REPLY AND CROSS MOTION FOR SUMMARY JUDGMENT ON CLAIM ONE, INSUFFICIENCY OF THE EVIDENCE.

### A.  PRELIMINARY PROOF OF INSUFFICIENCY.

#### 1.  The trial court repeatedly excluded evidence for Respondent's lone sufficiency argument.

The State proceeded on theories of murder and capital murder without having any evidence for critical elements that the prosecution had to prove.  Unable to find facts in the record to support a conviction on any count, Respondent is reduced to asserting that "[t]he involvement

1

of a middleman [meaning Prystash] does not serve to protect Fratta from conviction." RSMJ at 43. However, the trial court **sustained** trial counsel's repeated objections to the introduction of facts or argument that the only candidate for middle man, namely, co-defendant Prystash, was a middle man.

> 17 MR. MCDONALD: Judge, for the purposes of
> 18 the record, even though it was objected to it was
> 19 mentioned that Joe was the middle man in about six times
> 20 a while ago and now --
> 21 THE COURT: She objected, I sustained it,
> 22 and every time she asked me to instruct the jury to
> 23 disregard, I did.

27 RR 217.

Nor is there a Count alleging Fratta used a middle man. The relevant Counts allege that Fratta aided and abetted Prystash's commission of murder and capital murder, and aided and abetted Guidry's commission of murder and capital murder.

In sum, Respondent's appeals to this Court to sustain Fratta's capital conviction on an unindicted theory of the offense for which the evidence is non-existent because the trial court excluded testimony the State's hoped would support this theory. For these reasons, the Court should issue the writ forthwith with respect to Fratta's Claim One.

> **2. Proof that there was no evidence supporting a conviction on the lesser included offense of murder entails there was insufficient evidence for a capital conviction as well.**

Under *Jackson v. Virginia*, 403 U.S. 307 (1979), the record must reflect sufficient evidence from which a reasonable jury could find each element of the offense beyond a reasonable doubt. Conversely, if the record does not contain sufficient evidence supporting on or more elements of the offenses set forth in the indictment and jury charge, relief is required. Normally, this involves a review of the record followed by tedious arguments, directed at each piece of evidence supporting

each count, that purport to explain why this evidence is insufficient.  In Fratta's case, however, proof that the evidence is insufficient is a relatively simply affair.  It follows from the following legal reality:

> **If there is insufficient evidence supporting elements that the State had to prove in order to convict Fratta on a theory of the lesser included offense of murder, it follows that there cannot be sufficient evidence supporting the greater offense of capital murder.**

Under Texas Penal Code, section 19.02(b)(2)(1), "[a] person commits an offense [of murder] if he … intentionally or knowingly causes the death of an individual." Under the law of the parties instruction the Court granted pursuant to Texas Penal Code, section 7.02(a)(2), Fratta could be held "criminally responsible **for an offense committed** by the conduct of another [in this case, murder] if … acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."

Application paragraphs of the jury charge correctly set forth the elemental facts that the State had to prove to convict Fratta of the lesser charge of murder under Sections 19.02(b)(2)(1) and section 7.02(a)(2), as follows:

> Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 9th day of November, 1994, in Harris County, Texas, the defendant, Robert Alan Fratta, did then and there unlawfully, intentionally or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm; or if you find from the evidence beyond a reasonable doubt that on or about the 9th day of November, 1994, in Harris County, Texas, Joseph Andrew Prystash and/or Howard Guidry, did then and there unlawfully, intentionally or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Joseph Andrew Prystash and/or Howard Guidry to commit the offense, if he did, then you will find the defendant guilty of murder.

In order to sustain the conviction on the lesser charge, and therefore to sustain a conviction on any theory of capital murder, the record therefore had to contain sufficient evidence supporting at least one set of the following elemental facts:

  i.  That Fratta shot Farah with a deadly weapon; or

  ii. That Prystash shot Farah with a deadly weapon and Fratta aided and abetted Prystash's commission of this offense; or

  iii. That Guidry shot Farah with a deadly weapon and Fratta aided and abetted Guidry's commission of this offense.

However the following propositions are indisputable, and show, indisputably, that the evidence is insufficient to convict Fratta or murder or, it follows, of capital murder.

  - It is undisputed and uncontested that Fratta did **not**  shoot Farah Fratta with a firearm.

  - It is undisputed and uncontested that Prystash did not shoot Farah; therefore, it is undisputed and uncontested too that Fratta did not aid or abet the shooting of Farah by Prystash.

  - It is indisputable and incontestable that Fratta did not communicate with Guidry, nor was he even aware of the existence of Guidry.  Furthermore, the trial court excluded testimony that Prystash was a middleman who paid Guidry money that Fratta supposedly gave Prystash; hence, it is indisputable and uncontestable that Fratta did **not** solicit, encourage, direct or aid or attempt to aid Guidry in the commission of the offense of shooting Farah.

The foregoing theories (i, ii, and iii above) exhaust the State's theories of murder.  No matter the theory of the offense on which the Court's charge allowed the jury to convict Fratta, there was insufficient evidence for critical elements. Indeed, the State own position was that neither Fratta nor Prystash shot Farah.  The only nominally open question, therefore, is whether the record might contain sufficient proof that Fratta did "solicit, encourage, direct or aid or attempt to aid Guidry" in the commission of the offense of shooting Farah.  That  question is easily answered by

the fact that there was no evidence whatsoever that Fratta had any dealing with Guidry or knew of his existence.

In fact, the State argued in memoranda and orally before the trial court in pretrial proceedings that that Fratta "was supposed to pay Howard [Guidry] one thousand dollars" through Prystash, but the State admitted,

> 14 Howard didn't know who Bob was and Bob didn't
> 15 know who Howard was. Joe subcontracted Howard to kill
> 16 Farah in November. Howard was getting paid. Argued by
> 17 Mr. McDonald that Joseph Prystash was this driver that
> 18 Fratta was the planner. Fratta makes -- Prystash makes
> 19 a statement clearly here where he is the one who hired
> 20 Guidry. Fratta and Guidry don't know each other.
> 21 Prystash admits that he is a true middle man. In the
> 22 typical murder-for-hire scheme he is the person who goes
> 23 out looking for the actual triggerman.

20 RR 72-73 (Excerpt attached).

Furthermore, the State's attempt to establish that Fratta solicited Guidry through a middle man was precluded, as mentioned above, by repeated rulings sustaining objections to the interjection of all evidence the state tried to sponsor in support of this "middleman" theory. 27 RR 206-207, 217.   The trial court, moreover, **dis**allowed all testimony that the State planned to introduce to show that Prystash met Fratta at a gym to get a thousand dollars from Fratta to pay Guidry.[1] *Id.*  Indeed, the trial court sustained objections to Gipp's attempt to testify that Prystash told her he was going to meet Fratta after the murder at a gym for any reason.  27 RR 220-221.

---

[1] One reason why the trial court sustained objections to this testimony at Fratta's 2009 trial is that this Court held in 200** that this hearsay testimony from Prystash  that the state tried to introduce through Gipp bore no indicia of reliability.

Besides not having evidence for conduct – such as payment of Guidry, or contact with or communications about Guidry – the State also had no evidence supporting the necessary mens rea to convict Fratta on a law of the parties theory.   In order to convict for aiding and abetting Guidry to commit murder, the State had to provide evidence that Fratta intended for Guidry to shoot Farah. *See Ex parte Thompson*, 179 S.W.3d 549, 554 (Tex. Crim. App. 2005) ("What matters under Section 7.02(a) is the criminal mens rea of each accomplice; each may be convicted only of those crimes for which he had the requisite mental state.").   As the State acknowledged, Fratta knew nothing about Guidry or his involvement; the State did not introduce any evidence  that Fratta believed some other person besides Prystash would be involved.

The State had **zero** evidence for critical elements of every offense that it actually charged Fratta with committing.  **The State had NO evidence Fratta shot Farah, NO evidence Prystash shot Farah, and NO evidence Fratta aided and abetted Guidry to commit murder (or any other crime, such as burglary) or intended to assist Guidry to commit murder (or any other crime, such as burglary).**  The State had to prove one or more of these facts beyond a reasonable doubt in order to convict Fratta of the *lesser* included offense of murder in accordance with Due Process and the Sixth Amendment. The State had also had to prove at least one of the foregoing elemental facts  in order to convict Fratta of capital murder, as well as prove  that Fratta intended to assist Prystash or Guidry to commit an underlying felony.  *See Nava v. State*, 379 S.W.3d 396 (Tex. App. – Houston [14th], 2012) (noting that **"in the capital-murder context, which requires an accomplice  intend to assist both the underlying felony and intentional killing"**).  With its "middleman" evidence that Fratta paid Guidry through Prystash excluded, the State utterly failed in every respect   This Court should, therefore, order unconditional relief on Fratta's First Claim, based on constitutional insufficiency of the evidence.

### B.  SUMMARY OF RESPONDENT'S ARGUMENT AGAINST RELIEF ON FRATTA'S INSUFFICIENCY OF THE EVIDENCE CLAIM (CLAIM ONE IN THE AMENDED PETITION)

Respondent maintains that procedural defenses justify summary judgment on Fratta's insufficiency of the evidence claim.   First, Respondent contends that Fratta procedurally defaulted this claim.  Fratta raised a *Jackson* claim on direct appeal, but he did so in *pro se* pleadings, while he was represented by appointed appellate counsel.  Respondent argument for procedural default is that the TCCA, in denying relief, applied an independent and adequate procedural ground, which Respondent calls a state "bar against hybrid representation."  *Id.* at 36.  Second, Respondent maintains that Fratta's claim is not exhausted, also because he pled this claim *pro se*, and because Fratta did not file a petition for discretionary review reasserting this claim (Petitions for discretionary review by the Texas Court of Criminal Appeals may be filed only in cases in which direct appeal is to an **intermediate** Texas Court of Appeals; direct appeal of death penalty cases go straight to the Texas Court of Criminal Appeals. One does not file petitions for discretionary review in capital cases).

Respondent, furthermore, marshals several arguments in an attempt to show that Fratta's insufficiency claim is "without merit."   First, Respondent contends that in "Federal habeas, *Jackson* claims face a high bar . . . because they are subject to two layers of judicial deference." RMSJ at 40 (citing *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam)).  Secondly, Respondent says Fratta's complaint about insufficiency "center on the indictment," so standards governing insufficiency of the indictment govern; therefore, Respondent insists that federal habeas relief is warranted only if "the indictment is so defective that it deprives the state court of jurisdiction." RMSJ at 43 (citing *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994)).  Thirdly, Respondent contends Fratta's *Jackson* claim cannot survive harmless error analysis, which

Respondent says the District Court should apply, because the insufficiency claim "centers on the indictment," and therefore is "trial error" subject to standards set forth in *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). RMSJ at 44.  Finally, Respondent reproduces a swath of facts set out in the Texas Court of Criminal Appeals decision on direct appeal and declares the evidence sufficient.

### C.  ACTUAL STANDARDS

Respondent is mistaken about the standards and the evidence.  The analytical framework is straightforward.

1. A reviewing court first determines whether Texas's rule regarding hybrid representation is an independent and adequate state law ground for dismissing Fratta's *Jackson* insufficiency claim;

2. If the court finds that Texas rule regarding hybrid representation is not an independent and adequate state law ground, then the Court reviews *Jackson* sufficiency ***de novo*** under federal insufficiency of the evidence standards;

3. Under federal standards governing *Jackson* sufficiency review that court determines whether the evidence is sufficient as measured against the elements defining the criminal conduct with which the defendant was charged.

Contrary to Respondent, if the Court finds that Texas law regarding hybrid representation is not an "adequate state law ground" for dismissing Fratta's insufficiency claim, the Court does **not** apply doubly deferential standards to that claim, the Court does **not** use sufficiency of the indictment standards rather than insufficiency of the evidence standards, and the Court does **not** engage in harmless error analysis of a sufficiency of the evidence claim.

### D.  TEXAS' RULE REGARDING HYBRID REPRESENTATION IS NOT AN ADEQUATE STATE LAW GROUND.

#### 1.  Texas does not have a rule or a bar *AGAINST* hybrid representation.

The Texas Court of Appeals disposed of Fratta's state claims for habeas relief on the ground that he was not entitled to **hybrid representation on direct appeal**. There is no basis, whatsoever, for finding that Texas doctrine, as applied at the trial or **at the appellate level**, constitutes an independent and adequate state law ground.

On appeal, the Texas appellate courts routinely announce that they will review pro se pleadings filed by represented defendants "**in the interest of justice."**  *See Williams v. State*, 946 S.W.2d 886, 892 (Tex.App.-Waco 1997, no pet.).  In reality, Texas appellate courts follow no discernable standards or tests.  The TCCA has never provided guidance on when the "interest of justice" should or should not be invoked to reach claims filed pro se by defendants who have counsel ("hybrid claims").  Texas courts have not developed anything like threshold standards for determining when to review a claim "in the interest of justice," such as those used by federal courts to determine whether they, or other courts, are entitled to go forwards with merits review of Title 28 U.S.C. 2254 claim.  *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), (explaining standards for Certificate of Appealability); *and see Rhynes v. Weber*, 544 U.S. 269 (2005) (setting thresholds for abating federal claims to allow exhaustion in state court).

#### 2.  Texas rule regarding hybrid representation is standardless.

There are cases in which reviewing courts consider whether counsel filed "an adequate brief" before reaching pro se claims.  What counts as an "adequate brief" though is indecipherable. In other cases, it is the type of error, or the seriousness of the error, raised in a pro se pleading that occasions merits review "in the interest of justice."  *See Johnson v. State*, 629 S.W.2d 137, 139 (Tex. App. – Dallas, 1982). In *Madden v. State*, 691 S.W.2d 688 (Tex. Crim. App. 1985), for

example, the pro se pleading complained that the trial court allowed the prosecution to impeach him with his prior statements without affording him the right have the court determine in a hearing whether he gave those prior statements voluntarily. The TCCA reached this state law issue "in the interest of justice" and reversed. *Id.* at 691. In *Williams v. State*, 946 S.W.2d 886, 892 (Tex.App.- Waco 1997, no pet.) the court affirmed the verdict, but, reflecting the merit of Williams' claims, addressed multiple issues raised pro se at length.

Rather than developing thresholds for reaching or refusing to consider the merits of hybrid claims, which then might qualify as an adequate rule, Texas courts invoke the "interest of justice" to reach hybrid appellate claims apparently just to mollify appellants. In *Tones v. State*, 2005 WL 723673 (Tex. App. – Austin, 2005), the court noted "an appellant is not entitled to hybrid representation," then in the interest of justice … reviewed the brief" only to announce "it raises no issues of merit." *Id.* at *4. *See, also, In re State ex rel. Villalobos*, 218 S.W.3d 837, 841 (Tex. App. – Corpus Christi, 2007) (same). In *Evans v. State*, 677 S.W.2d 814, 821 (Tex. App. – Ft. Worth, 1984), the court repeated the mantra that "appellant is not entitled to have a pro se brief considered when his legal counsel has filed an adequate brief because it would amount to hybrid representation." Then, in the interest of justice, the court carefully examined appellant's brief" and again found "no fundamental error raised." *Id*

Instead of criticizing the practice of citing the "interest of justice," then reaching the merits for no apparent reason other than to mollify the appellant, the Texas Court of Criminal Appeals has set precedents justifying this rudderless practice. In the *en banc* decision of *Modden v. State*, 721 S.W.2d 859, 863 (Tex. Crim. App. 1986), the TCCA, after the usual preface that defendants are not "entitled to hybrid representation," reviewed the pro se brief of a represented client and found "the contentions therein to be meritless." *See, also, Flores v. State*, 871 S.W.714, 724 (Tex.

Crim. App. 1993) (*en banc*) (same); *Stephens v. State*, 677 S.W.2d 42, 45 (Tex. Crim. App. 1984) (*en banc*) (same).

In still other cases, Texas courts, without even mentioning "interests of justice," rule on the merits of pro se pleadings. In *Cambell v. State*, 2000 WL 553185 (Tex. App. – Hou. [1ˢᵗ]) (unpublished), for example, the Court gave no justification at all for reaching pro se claims. Moreover, before reaching the merits of the pro se brief, the *Cambell* court found that appellate counsel had filed **an acceptable *Anders* brief**. This means the court reached the merits of claims that it had predetermined were frivolous.

> ### 3. The practice of reaching weak and meritless claims that Texas courts could dismiss on other procedural grounds proves that "the interest of justice" is an infinitely flexible concept rather than a rule.

In *Phillips v. State*, 604 S.W.2d 904 (Tex. Crim. App. 1979), a represented appellant filed a supplemental appellate brief pro se. Under the existing rule of Appellate Procedure, such briefing had to be filed first in the trial court. The TCCA could have dismissed the supplemental briefing based on this bright line procedural rule. However, the TCCA invoked the interest of justice to reach the merits of claims Phillips included in his supplemental pro se brief. In other words, the "interest of justice" rubric was used to except from a bright line procedural rule.

Besides the fact that there were compelling reasons **not** to reaching the merits of Phillips pro se claims (namely, a different bright line procedural rule), there were no positive countervailing reasons, having to do with the interest of justice, for reaching the merits. Phillips' trial counsel obviously filed an adequate brief. The TCCA voiced no complaints and devoted the better half of its *Phillips* opinion to addressing counsel's arguments. Nor did State interests figure into the equation. Had the TCCA considered them, they would, if anything, have tipped scales in favor of **not** considering Phillips' pro se pleadings. Concerns of a manifest injustice did not arise either.

Phillips did not complain *pro se* that the evidence was insufficient, for example, or that prosecutorial misconduct marred his trial.

*Phillips* is not an exceptional case that proves the existence of a rule against hybrid representation. Numerous Texas court have invoked the interest of justice to reach the merits of hybrid pleadings raising facially dubious claims even when, under the Rules of Appellate procedure, the courts did not have authority to reach those claim no matter who filed it, whether counsel or pro se appellant. Appellate review in Texas cases is restricted to the appellate record which consists of the clerk's record and, if necessary to the appeal, the reporter's record. TEX. R. APP. P. 34.1; *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex.Crim.App.2004). Nonetheless, in *Ghant v. State*, 2006 WL 952384 (Tex. App. – Austin, 2006) (unpublished), the Court of Appeals invoked interests of justice to reach a hybrid claim that relied on extra record facts and added nothing to the brief filed by counsel. In *Fuller v. State*, 30 S.W.3d 441, 445 (Tex. App. – Texarkana, 2000), also, the appellate court "[c]onsidered [appellant's] pro se brief in the interest of justice" despite the brief's reliance on facts "mostly outside the record."

### 4. Texas' rule regarding hybrid representation is readily distinguished rules *against* hybrid representation applied by other States

Unlike Texas, other states have rules against hybrid representation that establish bright lines. In Illinois, "a defendant represented by counsel has no authority to file pro se materials, unless those materials challenge counsel's effectiveness." *See People v. Rucker*, 346 Ill.App.3d 873, 882 (2004). Thus, if a defendant's files a pro se petition while his counsel represents him, it is deemed "not properly filed and could not have been considered." *People v. Diaz*, No. 1–09–689 at 5–6 (Dkt. 14–6, Page ID# 756–757). Similarly, the Florida Supreme Court "announced a rule that absent an unequivocal request to discharge counsel, pro se petitions filed in the Florida Supreme Court by petitioners who were represented by counsel in pending criminal proceedings

in the trial court would be dismissed." *Farmer v. McNeil*, 2010 Wl 1957502, *7 (N.D. Fl. 2010) (unpublished Magistrate Judge opinion) (citing *James v. State*, 747 So.2d 461, 479 (Fla. 2d DCA 1999)).

### 5. The cases Respondent cites contrast sharply with the application of Texas's rule regarding hybrid representation.

In support the argument that the TCCA's disposal of Fratta's pro se appellate claim was based on an independent and adequate state law ground, Respondent cites *Beard vs. Kindle*r and *Walker vs. Martin*, for the proposition that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. *Id.* (*citing Beard vs. Kindler*, 558 U.S. 53 (2009) and Walker vs. Martin, 562 U.S. 307 (2011)). However, neither case justifies treating Texas law regarding hybrid representation as an adequate state law ground for disposing of constitutional claims raised in pro se pleadings. Indeed, the cases highlight the difference between adequate, though discretionary, rules regarding hybrid representation developed in other jurisdiction and Texas' doctrine.

*Kindler* is an exactingly fact-specific ruling, narrow because ". . . the question we granted certiorari to decide is narrow." *Kindler*, 562 U.S. at __. Kindle was convicted of capital murder and sentenced to death; he escaped from prison, more than once, but eventually sought to have his post-verdict motions reinstated by his trial court. Id. at 56-58. The Court, unsurprisingly, demurred, interpreting Pennsylvania's fugitive forfeiture rule to allow it the discretion to dismiss his motions. Id. at 58. Importantly, the Court granted certiorari to decide only if "discretionary rules are automatically inadequate," and the question was subsequently agreed by the parties at argument. Id. at 62. Despite invitation to make "a new effort to state a standard for inadequacy," the Court instead waited for a better case. Id.

*Walker vs. Martin*, decided two years later, addressed the question squarely, with regards to California's habeas corpus rules.  562 U.S. at  310.  California's rules do not have fixed time-table; instead, the standard requires petitioners to file their claims "as promptly as the circumstances allow," and to state when they first learned of their claims, and why they did not seek relief sooner.  Id.  The Supreme Court found that fact that this Court made doctrine allows judicial discretion in their enforcement does not mean that they are "meaningless" or "vague."  Id. at 317.  In fact, the California Supreme Court caselaw that frames the rule can be applied to particular circumstances with "requisite clarity," and such rules are no different than the federal habeas standards of due diligence or prejudice.  Id. at 318 (discussing former Federal Habeas Corpus Rule 9(a), current version of 28 U.S.C. § 2255(f)(4), 2244(d)(1)(D)).  The interest of justice rubric that frequently, but not always, prefaces Texas court decisions to reach pro se claims cannot be described with straight face as having "requisite clarity."

### 6.  The fact that federal courts have discretion to disallow hybrid representation does not entail that Texas "doctrine" is adequate.

In the federal system, "[t]he decision to grant or deny 'hybrid representation' lies solely within the discretion of the trial court." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989), cert. denied, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990).   However, the federal courts impose burdens and standards that permit definite determinations of whether hybrid representation is or is not necessary.   A federal court "need not permit  hybrid representation if a defendant does not offer a 'compelling reason,' ... or show that 'the interests of justice [would be] served by a defendant's supplementation of the legal services provided by his retained counsel'. " *United States v. Parker*, 2009 WL 5342774, *2 (W.D.N.Y.2009) (Payson, M.J.), Report and Recommendation adopted by, 2010 WL 114575 (W.D.N.Y.2010) (Larimer, J.).

In contrast, Texas courts do not require defendant to make a showing of any sort.  Nor have the Texas courts developed a body of precedents from which federal courts can discern even roughly what criteria Texas courts are bound to use in determining whether or not to grant or deny hybrid representation.

" 'To be adequate, the procedural ground must be strictly or regularly followed and applied evenhandedly to all similar claims.' " *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (citation omitted). As seen, Texas courts consider the merits of facially invalid claims hybrid claims, and even reach hybrid claims ordinarily deemed noncognizable, without any discernable justification for reaching these claims rather than dismissing them as it customarily would if raised by appellate counsel   That can no clearer indication than this that decisions by Texas courts to reach the merits of pro se claims "in the interest of justice" are simply arbitrary rather than the results of regularly and consistently applied procedural rules that result in evenhanded treatment of similar claims.

### E.  FRATTA WOULD BE ENTITLED TO MERITS REVIEW EVEN WERE TEXAS TO HAVE A ROBUST RULE AGAINST HYBRID PRESENTATION BECAUSE HE SOUGHT TO PROCEED WITHOUT COUNSEL, AND IDENTIFIED CONFLICTS WITH COUNSEL, BUT HIS RIGHTS WERE DENIED.

#### 1.    Fratta expressly requested that he be allowed to represent himself.

Fratta complained extensively that counsel appointed to pursue his direct appeal was ineffective. *See USDC Doc. 61-48* p. 3.   The reason why, Fratta explained, was that appellate counsel refused even to consider the challenges that Fratta wanted to raise against the sufficiency of the evidence and the constitutionality of the jury instructions. *Id.*  Appellate counsel failed to respond to correspondence and did not arrange to visit Fratta to discuss the causes of action Fratta proposed. *Id.*  However, the Texas courts failed to convene a hearing on Fratta's request to proceed

15

pro se, and also failed to address the conflicts between himself and appellate counsel that Fratta documented for them.

Fratta also proposed a cogent solution.  Fratta expressly requested that he be allowed to represent himself, present his own claims as his primary claims, and adopt the pleadings drafted by appointed appellate attorney as his own pro se arguments.  *Id.*   Under Texas law, Fratta had a right to represent himself pro se and, of course, could not be prevented from adopting arguments his counsel had made.  The appellate attorney's work product belonged to Fratta to use as he pleased.

### 2.      Texas law recognizes a right to self-representation.

In *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 164 (2000), the Supreme Court examined *Faretta v. California*, 422 U.S. 806 (1975), and concluded that the constitutional right to represent oneself does not extend to the appellate process under either the Sixth Amendment or the Due Process Clause.  However, Texas does not have an independent and adequate rule against appellate self-representation.  To the contrary, Texas courts **recognize** a right to self-representation on appeal.

In *Webb v. State*, 533 S.W.2d 780 (Tex. Crim. App. 1976), the Texas Court of Criminal Appeals plainly held that "the right of an accused to reject the services of counsel and instead represent himself extends beyond trial into the appellate process." *Id.* at 784; *see, also, Hathorn v. State*, 848 S.W.2d 101, 122–23 (Tex. Crim. App.1992).  Although the *Webb* decision mentioned *Faretta* in arriving at its holding, it did not expressly state that either *Faretta* or the Sixth Amendment afforded an appellant the right to self-representation. Instead, the court said that "[i]t has long been held in this State [Texas] that a trial court may not force an accused to accept an

attorney if he wishes to waive representation and defend himself" and supported the statement via precedent of the Court of Criminal Appeals issued long before Faretta. *Webb*, 533 S.W.2d at 783–84. The Webb court decided, further, that a right to counsel at trial and on appeal implies a "correlative right to reject the assistance of counsel" "equally applicable to both the trial and appeal of a criminal case." *Id.*

Furthermore, an intermediate Court of Appeals has recognized a statutory right to proceed pro se on appeal.  *See Fewins v. State*, 170 S.W.3d 293, 296 (Tex.App.-Waco Sept. 7, 2005, order) (per curiam).[2]  The Legislature adopted article 1.051 in 1987. See Act of May 30, 1987, 70th Leg., R.S., ch. 979, § 1, 1987 Tex. Gen. Laws 3321, 3321–22 (amended 2001) (current version at TEX.CODE CRIM. PROC. ANN. art. 1.051 (Vernon 2005)).   Article 1.051(d) provides in pertinent part:

> (d) An eligible indigent defendant is entitled to have the trial court appoint an attorney to represent him in the following appellate ... matters:
>
> (1) an appeal to a court of appeals; [and]
>
> (2) an appeal to the Court of Criminal Appeals if the appeal is made directly from the trial court or if a petition for discretionary review has been granted[.]

TEX.CODE CRIM. PROC. ANN. art. 1.051(d)(1), (2).

As the *Fewin* court explained, subsection (f) then provides that a defendant may waive the right to counsel. *Id. art.* 1.051(f), while subsection (g) requires a trial court to advise a defendant who wishes to waive his right to counsel "of the dangers and disadvantages of self-representation," and determine whether "the waiver is voluntarily and intelligently made." *Id. art.* 1.051(g).  Looking

---

[2]  In *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 164 (2000), the Supreme Court examined *Faretta v. California*, 422 U.S. 806 (1975), and concluded that the constitutional right to represent oneself does not extend to the appellate process under either the Sixth Amendment or the Due Process Clause. However, Texas does not have an independent and adequate rule against self-representation.

at the statutory scheme as a whole, the clear implication is that appellants by statute are entitled to proceed pro se, otherwise the Legislature would not have mandated appellants receive *Faretta* type warnings about the perils of self-representation if they waive their right to appellate counsel.

Fratta had a right under Texas law to have his proceed pleading considered as a pro se appellant without counsel.  However, the TCCA ignored its own jurisprudence, ignored  the clear implications of statutory law identified in *Fewin*, *supra,* and refused to recognize Fratta's express requests to represent himself so he could present meritorious pro se claims.  Instead, of following its own holding entitling Fratta to proceed without counsel, the Texas Court used a rule regarding hybrid representation that Texas courts frequently invoke, with far less justification than it would have had in Fratta's case, to **reach** pro se claims.  In no sense, then did the TCCA apply a firmly established, regularly applied, or adequate procedural rule when it dismissed Fratta's *pro se* claims without reaching their merits on the ground that Fratta was engaged in hybrid representation.

### F.   FRATTA EXHAUSTED HIS INSUFFICIENCY CLAIM.

In *McBride v. Estelle*, 507 F.2d 903, 904 (5th Cir.1975), the Fifth Circuit held that the petitioner's pro se brief satisfied exhaustion.  McBride attacked his sentence on the ground that it exceeded his plea agreement.  The federal district court dismissed this allegation on the ground this issue had not been presented to the Texas courts.  28 U.S.C.A. § 2254.  However, McBride had submitted a supplemental brief to the principle brief filed by his counsel on direct appeal. The Fifth Circuit ruled this 'presentation' is enough to satisfy the jurisdictional requirements of § 2254. Other Circuits are in accord.  *See Kizer v. Uchtman*, 165 Fed.Appx. 465 (7th Cir. 2006); *Holloway v. Horn*, 355 F.3d 707, 715–16 (3d Cir.2004) (ruling that a pro se brief, which was supplemental to the brief filed by counsel, fairly presented a claim where the state court failed to rule on the request to file and never addressed the claim in its decision on the merits); *Dorsey v. Kelly*, 112

F.3d 50, 52 (2d Cir.1997) ("A petitioner may satisfy the exhaustion requirement by presenting his federal claim in a pro se supplemental brief, even if he has an attorney") (citing *Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992)); *Clemmons v. Delo*, 124 F.3d 944, 947–48 (8th Cir.1997) (ruling that a petitioner fairly presented his claim in a pro se supplemental petition, even though his attorney refused to include it in the opening brief and the state supreme court denied leave to file).

### G. RESPONDENTS ATTEMPT TO MARSHAL SUFFICIENT EVIDENCE IS A TOTAL BUT NECESSARY FAILURE, BECAUSE THERE IS NO EVIDENCE SUPPORTING THE OFFENSES ALLEGED AGAINST HIM.

#### 1. The essential elements the State had to prove, but failed to prove

Fratta was indicted for capital murder as defined in Texas Penal Code, sections 19.03(2) (murder in course of burglary) and 19.03(murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration). At the end of trial, the State received a law of the parties instruction under Texas Penal Code, section 7.02(a)(2) ("A person is criminally responsible for an offense committed by the conduct of another if …. acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense).

To sustain the conviction the record therefore has to contain constitutional sufficient evidence as follows:

  i.  In order to sustain a conviction on COUNT ONE, there must be sufficient evidence that Fratta shot Farah **and** employed Prystash to commit the offense for remuneration; or

      sufficient evidence that Fratta aided and abetted Prystash in shooting Farah for remuneration, namely, an automobile.

    ii.    In order to sustain a conviction on COUNT TWO, there must be sufficient evidence that Fratta shot Farah, **and** employed Guidry to commit the offense.

            or sufficient evidence that Fratta aided and abetted Guidry to shoot Farah for remuneration, namely, an automobile.

    iii.    In order to sustain a conviction on COUNT THREE there must be sufficient evidence that Fratta shot Farah and sufficient evidence Fratta did so in the course of a burglar; or

            sufficient evidence evidence that Prystash shot Farah and did so in the course of a burglary and sufficient evidence Fratta aided and abetted Prystash in shooting Farah during the course of burglary; or

            sufficient evidence evidence that Guidryshot Farah and did so in the course of a burglary and sufficient evidence Fratta aided and abetted Guidry in shooting Farah during the course of burglary

### 2.   Summary of Respondents argument that the evidence was sufficient.

Respondent's attempt to justify upholding the verdict reduces to three components. First, Respondent quotes at length the mixture of fact and conjecture found in the Texas Court of Appeal's opinion on direct appeal.  *RMSJ* at 40-42 (citing *State v. Fratta,* 2011 Tex. Crim. App. Unpub. LEXIS 759 at \*3-6).   However, the TCCA did not recite facts to show sufficiency of the evidence, since it chose not to recognize *Fratta's* pro se claim, and the selection Respondent cites do not come close to providing proof on all element of the offenses alleged against Fratta. For example, the TCCA takes no pains to show Fratta hired Prystash, mentioning only the fact that they were seen talking and overheard talking on the telephone before the murder.

Indeed, the selection from the TCCA's opinion is insufficient to show that Prystash or Guidry committed any crime, let alone murder for remuneration or burglary murder.  There is no mention in the excerpted selection of remuneration or burglary at all.  Instead, the excerpted

selection Respondent rests makes no attempt to relate evidence to essential elements, and for the most part simply sources, for example, as follows:

> The details of the offense were developed primarily through Gipp's testimony describing her observations and her conversations with Prystash, the testimony of some of Farah's neighbors who observed parts of the offense and saw a suspect leaving the scene, witnesses who spoke with and observed [Fratta] around the time of the offense, and law-enforcement officers who investigated the crime scene. Further evidence included telephone and pager records showing the times and locations of communications between [Fratta], Farah, Prystash, and Guidry on the evening of the offense and autopsy and ballistics reports.

RMSJ at 42 (quoting Fratta, 2011 Tex. Crim. App. Unpub. LEXIS 759 at *3-6.).

Respondent, like the TCCA, also makes no attempt to show that the factual background lifted from the TCCA's opinion is satisfactory proof under *Jackson* of essential elements of the crimes that the State alleged Fratta committed.  Nor can this be done.

Second, instead of attempting to extract sufficient evidence from the record showing that Fratta shot Farah (Count One) or that Prystash shot Farah (Count One and Three), or that Fratta aided and abetted Guidry (Counts Two and Three), Respondent tries to dodge the *Jackson* sufficiency issue by portraying Fratta's claim as complaint about the "sufficiency of a state indictment," which, Respondent says "is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction."  RSMJ at 43 (quoting McKay v. Collins, 12 F.3d 66, 68 (5th Cir. 1994)).  However, Fratta did *not* complain that the *indictment* was insufficient.   He complained clearly that the *evidence* was insufficient. The standards and analyses Respondent proposes for analyzing he sufficiency of  an indictment do not apply.

21

Finally, Respondent simply asserts that given "the evidence presented at trial there can be no doubt that **Fratta contracted with Prystash who solicited Guidry to murder Farah**." *Id.* at 42.  The problems with Respondent's attempt to reframe the offense for which Fratta was indicted and charged are manifold and fatal to Respondent's position, as shown below.

> **2.      Respondent requests the Court to uphold a conviction on an offense for which Fratta was not indicted or the jury charged with considering.**

Fratta was not indicted nor was the jury charged with finding that "Fratta contracted with Prystash **who** solicited Guidry" to shoot Farah.    Fratta also was not indicted or charged with finding that "Fratta contracted with Prystash **to** solicit Guidry" to shoot Farah.  Fratta was indicted for (1) soliciting Prystash to commit murder for remuneration, namely, to murder Farah with a deadly weapon in return for an automobile; (2) soliciting Guidry to commit murder for remuneration, namely, to shoot Farah with a deadly weapon in exchange for money; (3) and committing murder by shooting Farah with a deadly weapon in the course of a burglary.  At trial the Court authorized a law of the parties charge with respect to each indicted offense that survived.  (One indicted offense was dismissed before the jury began deliberations).   In addition to the language in the indictment, Fratta was charged with (1) aiding and abetting Prystash to commit murder for remuneration (an automobile) by shooting Farah with a deadly weapon; (2) aiding and abetting Guidry to commit murder for remuneration (money) by shooting Farah with a deadly weapon; and (3) aiding and abetting Guidry to commit murder during the course of a robber.

**Second**, this description – "contracted with Prystash who solicited Guidry" – does not describe an offense.  Contracting with someone is not itself criminal.  Respondent must spell out what the contract was for.  Respondent fails to do this because that would send Respondent right back to the indictment and charge.  As Fratta explained, starting with his pro se pleadings and ending with the previous paragraph, the "contract(s)" alleged in the indictment and charge were to

solicit Prystash to shoot Farah, or solicit Guidry to shoot Farah, or to aid and abet Guidry to murder in the course of a burglary.  There was evidence Fratta solicited Prystash to shoot Farah in return for remuneration, but Prystash did not shoot Farah, and this fact (Prystash not being the shooter) is the problem the State and Respondent cannot maneuver past. **The law of the parties instruction the State asked for did not change the fact that in order for the State to convict Fratta of a capital crime on Count One the State still had to prove Prystash shot the victim, and the law of the parties instruction also did not change the fact that the State had to prove Fratta solicited or otherwise aided and abetted Guidry to commit murder for remuneration or burglary murder.**  The State has no evidence supporting these critical elemental facts.

**Third,** Respondent's phrasing – "contracted with Prystash **who** solicited Guidry" – is at once commendable, but also fatal to Respondent's efforts to avoid habeas relief.   It is commendable that Respondent at least implicitly recognizes that Fratta was **not** charged with "contracting (or soliciting) Prystash **to** solicit Guidry and implicitly recognizes that there was no evidence that Fratta contracted with Prystash to solicit Guidry or anyone else to shoot Farah.  There was no evidence Fratta was aware of Guidry's existence.

Rather than point the Court to evidence supporting offenses set forth in the indictment or jury charge, Respondent's entire argument for sufficiency of the evidence is a single sentence assertion that "[t]he involvement of a middleman does not serve to protect Fratta from conviction." RMSJ at 43.   However, t**here was no evidence whatsoever that Fratta intended, knew, or had the least reason to believe that Prystash would be the "middleman" who solicited someone else to commit murder.**   Indeed, the trial court disallowed evidence that Prystash was the middleman. 27 RR 217.   On multiple occasions when the State attempted to interject evidence that Prystash was the middleman, the trial court sustained defense counsel's objections.

> 23 MR. MCDONALD: I would ask for an
> 24 instruction to disregard any comments made by the
> 25 prosecutor with regard to a middle man.
> 1 THE COURT: I'm sorry.
> 2 MR. MCDONALD: Any comments made with
> 3 regard to a middle man.
> 4 THE COURT: Are you making a request at
> 5 this point? Everything she said so far I sustained the
> 6 objection.

27 RR at 206-207.

Respondent's attempt to show sufficiency of the evidence based on proof that Prystash was the middleman therefore falls completely flat. The fact that Respondent appeals to a theory that the trial court refused to allow the state to introduce evidence in support is illustrative of just how far from constitutionally sufficient the State's case against Fratta was.

### 3. Texas law rejects Respondent's desperate contention that evidence of solicitation "by extension" justifies upholding Fratta's capital conviction

In Response to Fratta's arguments that the jury charge constructively amended the indictment, Respondent reveals why this Court must reverse for insufficiency of the evidence. According to Respondent "**the prosecution alleged and proved that Fratta hired Prystash and by extension Guidry to murder Farah**." RSMJ at 47. However, there is no such thing as "solicitation by extension" or "hiring by extension". Resort to this theory is a concession that Fratta did **not** hire Guidry at all, nor did he pay Prystash to hire Guidry nor anyone else.

Respondent's argument that "the involvement of a middleman does not serve to protect Fratta from conviction" wishful thinking that Texas's aiding and abetting statute permits a court to uphold a capital conviction for solicitation of murder "by extension" if there is sufficient evidence that (1) Defendant solicited person 'B' to kill the victim with a firearm, and sufficient evidence (2) that 'B' solicited a third person 'C' to kill the victim firearm, and sufficient evidence

24

that (3) 'C' shot and killed the victim. However, Texas courts have refused to accommodate this type of "transitive guilt" or "transitive intent" in which A intends B to do X, B intends C to do X, therefore A is liable if C does X; it has done so even for offenses in which principles of constructive conduct have been imported into criminal law.

Texas has a doctrine of "constructive transfer," which is the transfer of a controlled substance either belonging to a defendant or under his direct or indirect control, by some other person or manner at the instance or direction of a defendant. *Davila v. State*, 664 S.W.2d 722, 724 (Tex.Crim.App.1984); *Rasmussen v. State*, 608 S.W.2d 205, 210 (Tex.Crim.App.1980). A conviction for delivery of a controlled substance by constructive transfer requires some showing that a defendant-transferor was "at least aware of the existence of an ultimate transferee before he may be said to have delivered or made a delivery of a controlled substance to another through a third party." *Gonzalez v. State*, 588 S.W.2d 574, 577 (Tex.Crim.App.1979). In addition, in either a constructive or an actual transfer situation, the evidence must show that a defendant-transferor voluntarily relinquished control or possession to a transferee. *Thomas v. State*, 832 S.W.2d 47, 51 (Tex. Crim. App. 1992). The aiding and abetting statute does not allow circumvention of these requirements.

Texas courts have not developed a doctrine of constructive solicitation or a doctrine of solicitation "by extension." Were Texas courts to do so, principles similar to those limiting constructive transfers in drug cases would also apply to murder for hire. That is, the State would have to make some showing that the defendant-solicitor was "at least aware" of the existence of ultimate payee before he could be said to have solicited the crimes the payee committed, and the State would have to make a showing that Fratta willingly or knowingly provided the intermediary

25

with means intended to permit the intermediary to pay that ultimate payee. Without the trial court sustaining objections to testimony that Prystash was the middleman,  27 RR 206-207, 217, that is an impossibility.

## CONCLUSION

In Fratta's case, the State specifically identified, in the indictment, the person who ultimately killed Farah in return for payment, namely, Guidry.  However, the State made no showing, nor could it make one, that Fratta was aware of the existence of Guidry, or that he was aware of the existence of anyone else whom Prystash intended to pay to kill Farah.  In fact, the State did not argue that Fratta realized Prystash would involve anyone else, Guidry included, in Fratta's murder.  The State sponsored evidence that Fratta solicited Prystash to shoot Farah, but Prystash did not shoot her. It sponsored some evidence (insufficient though) that Guidry shot Farah, but no evidence Fratta solicited or otherwise aided and abetted Guidry to commit any offense, whether murder or burglary.

Not only is there insufficient evidence supporting any theory of guilt for solicitation murder or burglary murder, State's evidence positively proves that Fratta did not commit the offenses with which he was charged. First, it is undisputed that Fratta himself did not shoot Farah, nor did he burgle his home.  Second, while there was evidence Fratta solicited Prystash to shoot Farah, there is no disputing the fact that Prystash did not shoot Farah.  Third, it is indisputable that Fratta did not meet Guidry, know of Guidry's existence, and indisputable that  Fratta neither solicited Guidry nor aided and abetted any burglary of Farah's home Guidry may have committed.

Summary judgement should be granted **in Fratta's favor** on Fratta's *Jackson* insufficiency of the evidence claim. Consequently, the judgment of convictions for murder and capital murder should be set aside. Furthermore, view of insufficiency of the evidence to support a finding of guilt, this Court should order Fratta acquitted of solicitation murder and burglary murder as required by the mandate of the Supreme Court of the United States in *Burks v. United States*, 437 U.S. 1 (1978) and *Greene v. Massey*, 437 U.S. 19 (1978).

## II.   REPLY TO RESPONDENT'S ARGUMENTS FOR SUMMARY DISMISSAL OF FRATTA'S SECOND CLAIM FOR RELIEF (CONSTRUCTIVE AMENDMENT/FATAL VARIANCE) AND CROSS-MOTION FOR SUMMARY JUDGMENT.

### A.  Table of Counts on which the Jury was Instructed.

| | |
|---|---|
| COUNT ONE | Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, the defendant, Robert Alan Fratta, did then and there unlawfully, intentionally, or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm, and the defendant did employ Joseph Prystash to commit the murder for remuneration or the promise of remuneration, namely, a motor vehicle; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, **Joseph Andrew Prystash** did then  and there unlawfully, intentionally, or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely a firearm, and the defendant did employ Joseph Prystash to commit the murder for remuneration or the promise of remuneration, namely, a motor vehicle, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid **Joseph Andrew Prystash** to commit the offense, if he did; <br><br> or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, the defendant, Robert Alan Fratta, did then and there unlawfully, intentionally or  knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm, and |

| | |
|---|---|
| COUNT TWO | that the defendant did employ **Howard Guidry** to commit the murder for remuneration or the promise of remuneration, namely, money; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, **Howard Guidry** did then and there unlawfully, intentionally or knowingly cause the death of Farah Fratta, by shooting Farah Fratta with a deadly weapon, namely, a firearm, and the defendant did employ Howard Guidry to commit the murder for remuneration or the promise of remuneration, namely, money, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Howard Guidry to commit the offense, if he did; |
| COUNT THREE (AND FOUR) | or if you find from the  evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, the defendant, Robert Alan Fratta, did then and there unlawfully, while in the course of committing or attempting to commit the burglary of a building owned by Farah Fratta, intentionally cause the death of Farah Fratta by shooting Farah Fratta with a deadly weapon, namely, a firearm; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 9th day of November, 1994, Joseph Andrew Prystash **and/or** Howard Guidry did then and there unlawfully, while in the course of committing or attempting to commit the burglary of a building owned by Farah Fratta, intentionally cause the death of Farah Fratta by shooting Farah Fratta with a deadly weapon, namely, a firearm, and that the defendant, Robert Alan Fratta, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Joseph Andrew Prystash **and/or** Howard Guidry to commit the offense, if he did, then you will find the defendant guilty of capital murder, as charged in the indictment

30 RR 14-21 |

**B.  Synopsis of Fratta's habeas allegations regarding the charge**.

Fratta maintained that the law of the parties charge constructively amended Count One (employing Prystash to shoot Farah) and County Two (employing Guidry to shoot Farah), because the State did not sponsor evidence supporting the allegation that Fratta aided and abetted Prystash

to shoot Farah for remuneration, or aided and abetted Guidry to do the same.  Fratta complained, too, that the law of the parties charge constructively amended the indictment because there was no evidence he aided or abetted Prystash commit burglary-murder or Guidry to do the same.  Third, Fratta maintained that the law of the parties charge constructively amended the indictment by allowing the jury to convict Fratta for conduct committed by codefendants that was not alleged at all in the indictment.  Finally, Fratta argued the abstract of the charge constructively amended the indictment by permitting the jury to find he simply aided and abetted a burglary, but not aided and abetted murder in the course of a burglary.

### C.  Summary of Respondent's Arguments

Respondent alleges the same "the bar against hybrid representation" and "exhaustion" defenses raised against Fratta's insufficiency of the evidence claim because Fratta raised his fatal variance/constructive amendment claims in his pro se pleadings.  Respondent also contends that Fratta's jury charge allegations are subject to harmless error analysis because Fratta did not raise fatal variance/constructive amendment complaints at trial.

Turning to the merits of Fratta's argument that a law of the parties charge was not justified with respect to Count One or Count Two, Respondent asserts simply that "the prosecution alleged and proved that Fratta hired Prystash and by extension Guidry to murder Farah."  With regard to the aiding and abetting burglary murder, Respondent maintains that the difference between an indictment that alleges Fratta alone committed burglary murder and a charge that alleges that Guidry and Prystash committed this offense, but that Fratta aided and abetted one or the other of them is "a mere quibble," did not surprise Fratta, and is therefore not a fatal variance.  Finally, Respondent likens Fratta's complaint to a complaint about jury unanimity.  Based on this comparison, Respondent concludes that disparities between indictment and jury charge are

immaterial, no matter how great, because "Fratta was charged and convicted with only one offense: the capital murder of his estranged wife." *Id.*

### D.  Fratta's response to Respondent's procedural and harmless error defenses.

Fratta realleges his argument that Texas rule regarding hybrid representation is not an independent and adequate state law ground for dismissing his Second claim for relief. Similarly, he realleges arguments that presenting a pro se claim exhausts that claim.

Respondent's argument that Fratta did not object at trial is meritless.  The TCCA did not dismiss Fratta's claims on this ground.  It is Respondent who cannot raise this state procedural defense in the first instance in federal habeas proceedings. Furthermore, constructive amendments of the indictment and fatal variances are not subject to harmless error analysis even in federal habeas.

### E.  Respondent's hiring "by extension" theory cannot prevent relief.

For reasons set forth in Fratta's Reply to Respondents argument for dismissal of his sufficiency of the evidence claim, the evidence supporting a law of the parties charge to either of the murder for hire charges was completely absent.  Indeed, as stressed in Fratta's earlier arguments, the trial court **excluded** any and all testimony that Prystash was a middle man, which is the lone theory Respondent can advance to justify a law of the parties charge on Count Two involving Guidry.

**F. Texas law allows the trial court to add the "law of the parties" to the jury charge, but U.S. Constitutional law does not allow the trial court to add parties themselves to counts in an indictment that mention none in order to then add a law of the parties charge; hence, the jury instructions constructively amended Count Three on burglary-murder.**

In order for the trial court to give a law of the parties charge on a given Count, the indictment has to allege that a party other than the defendant engaged in conduct constituting the offense. The typical situation is an indictment that alleges a defendant and his codefendants robbed and killed the victim. A law of the parties charge is then justified, provided that there's evidence the codefendants committed the crime and evidence the defendant aided and abetted. That is not the case here. In this case, the Indictment alleged that Fratta alone shot Farah in the course of a burglary. As a result, there were no parties to which a law of the parties charge could apply.

The fact that the law of the parties, i.e., Rule 7.02(a)(2) of the Texas Penal Code, does not have to be alleged in the indictment and can be added when the trial court instructs the jury does not mean that the state can add parties or add different parties to a Count at the end of trial and convict the defendant for aiding and abetting these actors. To put it in other words, the Court can add the law of the parties, i.e., the language of Texas Penal Code 7.02(a)(2), but cannot add actual parties that were not referred into the indictment.

The Indictment did not even allege that Fratta and others known and unknown shot Farah in the course of burglarizing her home. Had the indictment contained indefinite descriptions of other persons then the trial court might have been able to give a law of the parties charge without running afoul of Fifth Amendment rights to be tried for offenses found by a grand jury and Sixth Amendment rights to notice of charges on which a defendant is to be prosecuted. However, that is not what happened. The fatal variance from the indicted charge is as significant and dramatic as would be the case were a defendant to be indicted on charges of robbing a Wells Fargo branch,

31

only to have the State attempt to put on evidence he robbed a Frost Bank branch and secure a jury instruction that permitted conviction for robbing a Frost Bank branch.

### G. Respondent's assertion that there was no fatal variance between indictment and the jury charge on burglary murder because Prystash and Guidry are mentioned in other Counts of the indictment is completely backwards.

In *Drinkard v Johnson*, 97 F.3d 751, 773 (1996), the Fifth Circuit held that language telling a jury what factors it may consider necessarily excluded consideration of other factors. With statutes if a legislature includes "particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed … to act[] intentionally and purposely in the disparate inclusion or exclusion." *See Russello v. United States*, 464 U.S. 16, 23 (1983) So too a reference to parties or codefendants in all counts of an indictment, with the exception of one count must be interpreted as a purposeful omission by the Grand Jury. Jury instructions adding Prystash and Guidry as parties, then adding a law of a parties charge, clearly allowed Fratta to be convicted on different elemental facts in violation of Due Process and the Fifth Amendment.

Respondent says that Fratta cannot claim surprise. According to Respondent, because Prystash and Guidry are referred to in other Counts, Fratta should have anticipated that the State would seek a law of the parties charge on the burglary murder Count. However, whether a variation between indictment and jury charge results in surprise must be determined objectively by comparing the language of the indictment and jury charge, not by speculating about a defendant's subjective state. Here the inclusion of Prystash and Guidry in other indicted Counts, but omission from the burglary Count created the impression that the State would not prosecute for any burgling conduct engaged in by Prystash or Guidry. The switch at the close of evidence to precisely this theory obviously violate Fratta's Sixth Amendment rights.

III.   **REPLY TO RESPONDENT'S REQUEST THAT SUMMARY JUDGMENT BE GRANTED ON FRATTA'S *BRADY* CLAIM (CLAIM III-IV)**

**A.  Respondent's procedural defenses fail**

The State maintains that Fratta's *Brady* claim is procedurally defaulted and unexhausted. However, suppression of favorable material evidence from trial counsel and state habeas counsel excuses failure to exhaust and is an exception to procedural default.  *See Strickler v. Greene,* 527 U.S. 263 (1999).

**B.  Fratta established suppression and materiality**

**1.  Fratta identified the suppressed evidence in his federal pleadings**

Respondent complains that Fratta did not identify suppressed evidence in his Amended Petition.  Respondent is mistaken. Fratta clearly described and attached as exhibits evidence he claimed was suppressed.  *See Amended Pet.* at 40-42, Exs. 5, 8, 13.  This evidence consisted in police reports establishing that investigators had matched prints lifted off the car, from which Farah had just exited when she was shot, to Vernon Barlow. *Id.*

**2.  Fratta established the State suppressed evidence from trial counsel**

Trial counsel filed numerous motions for exculpatory evidence, as detailed in the Amended Petition.  Fratta did not raise a defense at trial based on forensic evidence proving a suspect matching eye witness descriptions was at the scene of the crime.  This would have been an defense obvious to the experienced trial attorneys who represented him, Vivian King, now Chief of Staff to the Harris County District Attorney, and Randy McDonald, now the presiding judge over the 344th District Court, Chambers County, Texas.

Trial counsel's files do not contain fingerprint evidence tying Barlow to the crime scene, nor memoranda, or other documentation, referring to such evidence. The State's records do not

33

document disclosure of the evidence to trial counsel.  Furthermore, this evidence was not disclosed to Fratta's codefendant's, Howard Guidry's, trial counsel.  *See Guidry v. Stephens*, no. 4:13-cv-01885 (S.D. Tex)  USDC Dkt. [1].

### 3.  Suppressed evidence was not disclosed to state habeas counsel

State habeas counsel's extensive files do not contain fingerprint cards for Barlow nor police reports referring to the results. Ex. '1' (Affidavit of Patrick McCann).  State habeas counsel sought *Brady* evidence from the state during proceedings pursuant to Texas Code of Criminal Procedure § 11.071. *Id.*  State habeas counsel reports that none of the information Fratta claims was suppressed had been disclosed.  *Id.*  State habeas counsel and his staff reviewed the State's trial file and Fratta's defense counsel's trial file. *Id.*  According to stsate habeas counsel, neither file contained the fingerprint evidence implicating Barlow rather than Guidry in the shooting death of Farah Fratta.  *Id.*

### 4.  Fratta established the evidence was favorable and material

Respondent maintains that the identification of Barlow's fingerprints on the fender and driver side door of the vehicle Farah was driving the night she was shot is immaterial for the following reasons:  (a) "the fact that another black man's prints on Farah car alone is not enough to grant habeas relief; (b) the car Farah was driving was  "loaner" that her boyfriend let her use; (c) Fratta has no other evidence to show Barlow was involved; and (d) more importantly, it is not Guidry's guilt which is at issue here but Fratta's.

#### a.  Barlow was a suspect,  not just "another black man".

Barlow was not "another Black man."  Barlow was a suspect for reasons independent of the identification of his fingerprints.  Law enforcement seized Barlow's vehicle from the repair shop of another suspect, Pudhorsky, because it resembled the getaway vehicle.  Law enforcement

traced the license plates and registration to Barlow, and tested the interior for blood with positive

results. Upon identifying Barlow as the owner law enforcement was able to obtain Barlow's

prints from a prior unrelated arrest for unauthorized possession of a weapon.  Police matched

prints lifter from the car not to just "another Black man" but to a suspect in the murder of Farah

Fratta.

### b.   Fact car was loaned does not lessen exculpatory value of print.

Whether the car was a "loaner" from Deet's, rather than owned by Farah, is of no

importance whatsoever, unless Respondent has evidence suggesting Barlow had an innocent

reason for putting hands on Deets' car, such as being an acquaintance or neighbor of Deets or an

employee at Deets' dealership who had very recent contact with the car, since dealership cars, as

they are meant for sale, are customarily wiped down and washed with some regularity, and  if left

unattended are subject to vagaries, such as the weather, that makes retention of prints over time

difficult.

### c.   Other evidence of Barlow's involvement was suppressed.

As explained in sub section 'a' above. Barlow was a suspect for independent reasons.

The prints placed not just "another black man," but a murder suspect at the scene.  Respondent's

claim there's no other evidence of involvement is simply false.

### d.   Disproving Guidry's guilt undermines every nominally viable theory of the offense alleged against Fratta making the evidence exceedingly material.

Then fundamental fact that Prystash did not shoot Farah, meant that poof of capital murder

required the State to provide evidence proving beyond a reasonable doubt that Guidry shot the

victim and Fratta aided and abetted Guidry.   Evidence undermining Guidry's involvement

therefore exculpates Fratta.

*Brady* evidence has to be measured against the case the State actually sponsored. The State made no attempt to prove Prystash shot Farah; the State's theory was that he drove the getaway car and was not the shooter. Consequently, evidence that Barlow killed Farah destroys each and every theory the State advanced.    The only hope Respondent might have to minimize the exculpatory value of Barlow would be to find evidence in the trial record that an unidentified person was at the scene and, though unidentified, was connected to Fratta.  But the State introduced no such evidence, neither of another shooter, nor evidence connecting anyone else to Fratta or to Prystash.  Evidence that Barlow shot the victim therefore completely undermines each scenario of guilt, and shows instead that Farah was murdered by someone else, **un**associated with Fratta or his codefendants, for different motives than the State maintained led to the killing in this case.  It is therefore obvious that the Barlow evidence not only is material evidence impeaching the State's case, it positively exonerates Fratta with scientifically grounded facts.

Respondent also fails to confront the fact that  because of Barlow's greater stature, Barlow matches more closely the eye-witness description of the shooter that Farah's two neighbors gave to police and testified to at trial.  Barlow's car, which law enforcement seized and tested, also matches the description that these two witnesses gave of the getaway vehicle.  The Barlow evidence therefore severely weakened further the already weak eyewitness testimony that State used to try to connect Prystash and Guidry to the crime scene.

### C.  Court should review the claim de novo after convening an evidentiary hearing.

As in *Guidry v. Stephens*, Respondent insists that state courts would find that Fratta's Brady claim did not satisfy Article 11.071 § 5 standards allowing merits review of successor claims. Based on that representation, this Court may find that the claim is technically exhausted and ripe for consideration de novo in the federal system upon a showing of cause of prejudiced.

The elements for establishing cause and prejudice under *Murray v. Carrier*, 477 U.S. 478 (1986) and *Strickler v. Greene,* 527 U.S. 263 (1999), mirror those for establishing a *Brady* claim itself. Petitioners must prove suppression of evidence and reasonable probability that the suppressed evidence, had it been disclosed to trial counsel, would have affected the jury's deliberation. In addition, petitioners must demonstrate that the state prevented state habeas counsel from discovering the *Brady* material.

For reasons set forth above, Fratta has demonstrated that the State withheld the Barlow evidence from trial counsel. As also explained above, the suppressed evidence is material, particularly in light of the insufficient amount of evidence the State marshalled in support of the single, barely colorable theory of guilt, involving Fratta aiding and abetting Guidry, that the State advanced. Consequently, the evidence satisfies the prejudice prong of the *Carrier* inquiry.

This Court should therefore grant Fratta's request for an evidentiary hearing and, thereafter, evaluate de novo Fratta's *Brady* claim.

### D.  Alternatively, the Court should stay and abate proceedings to allow Fratta to exhaust his *Brady* claim in State court pursuant to *Rhines v. Weber.*

Fratta concedes that the *Brady* claim he raised as his Fourth Claim for Relief is **unexhausted.** However, this fact alone does not justify denial of relief on procedural grounds. To the contrary, in *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court imposed a requirement of "total exhaustion," but directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to that court in the first instance. *Id.,* at 522. In *Rhines v. Weber*, 544 U.S. 269 (2005) the Supreme Court set forth standards that govern this process in post-AEDPA cases.

37

Under *Rhines,* a federal court should stay proceedings and permit a petitioner to exhaust claims in State court if (1) the petitioner had good cause for his failure to exhaust, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *Id.* at 278.   In such a case, the Supreme Court held a "petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions."

With regard to *Rhine*'s second prong,  a "potentially meritorious" claim is a colorable claim. *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir.2005) (holding that federal court may deny an unexhausted claim on the merits only when it is clear that the petitioner does not raise even a colorable federal claim).That is to say, a claim that is not plainly frivolous.   *See Paterson v. Warren*, 2013 WL 3964915 (D.N.J. 2013) (not reported) (stating that "case law suggests that, when faced with an ambiguous situation, the district court should, out of abundance of caution, strive to err on the side of ensuring the litigant's opportunity to seek federal habeas review of all claims he wishes to raise").

### 1. Fratta should be allowed to exhaust in state court for reasons articulated by Judge Gilmore in the co-defendant Guidry's federal habeas case.

Guidry raised a Brady claim based primarily on the suppression of fingerprint evidence supporting the conclusion that Barlow, not Guidry, was the shooter.[3]  Judge Gilmore rejected the very arguments that Respondent marshals now against Fratta.  In *Guidry v. Stephens,* 4:13-cv-01885 (S.D.Tex), Respondent contended, as she does here, that state court's would consider

---

[3] Guidry also argued that the State suppressed results of  ballistic tests on the revolver found on Guidry after a bank robbery, which took place months after Farah's murder, and traced to Fratta. The withheld results excluded the revolver Guidry was carried from being the murder weapon.  These results were not suppressed from Fratta's attorney, but the State court refused to allow the Defense to admit them or use them to cross examine the State's expert.

Guidry's attempt to exhaust *Brady* claims in a successive 11.071 application an abuse of the writ.' Guidry v. Stephens, 4:13-cv-01885 (S.D.Tex), Dkt. [48] (Order by Gilmore, J)   Since the abuse of the writ doctrine is an independent and adequate state law ground, Respondent urged the federal district court to find Guidry's *Brady* claim procedurally defaulted.   *Id.* Guidry countered that if Respondent were correct, then the *Brady* claim was technically exhausted because Guidry no longer had a state court remedy available to him. *Id.*

Judge Gilmore considered and rejected Respondent's argument that state courts would summarily reject Guidry's *Brady* claim as an abuse of the writ. *Id.*  Judge Gilmore likewise rejected Guidry's first option, which was for the district court to find the claim technically exhausted, determine whether Guidry had shown cause and prejudice, then reach the *Brady* claim *de novo*. Instead, Judge Gilmore rightly determined that "the interests of justice" and principles of comity that *Rhines* recognized made staying and abating Guidry's federal cause of action the proper course, so that State court's could decide in the first instance whether Guidry had abuse the writ and have the first crack at assessing the merits of Guidry's *Brady* claims were it to find Guidry's successor claims non-abusive. *Id.*

For similar, if not identical reason, this Court should stay and abated federal proceedings so Fratta can exhaust his *Brady* claim.

### 2.   Fratta can show good cause for non-exhaustion

When a *Brady* claim is at issue, a colorable claim that the state suppressed evidence from trial counsel and state habeas counsel suffices to show good cause.   The evidence and argument that Fratta assembled in his Amended Petition and in this Reply and Traverse easily raise a colorable claim the State withheld evidence from trial counsel.   Based on criteria that the Supreme

Court established in *Strickler*, Fratta also has a colorable claim that the State  prevented state habeas counsel from discovering the withheld evidence.

Strickler's state habeas counsel sought *Brady.*  The State represented that it had an open file policy.  The Supreme Court found that this combination of diligence on state habeas counsel and affirmative representations that trial counsel had access to all relevant documents in the state's possession or control constituted the type of misleading affirmation of full disclosure constituted state action that prevented discovery. *Id.*

The Barlow print evidence was in the State's sole possession and control.  There was no suitable equivalent available to counsel from other sources. Fratta's state habeas counsel diligently sought  *Brady* material, and Harris County afforded review pursuant to an open file policy.   Hence, as in *Strickler,* state action prevented state habeas counsel from discovering the Barlow evidence.

### 3.  Fratta's *Brady* claim is potentially meritorious

The Barlow prints found on the car exited when she was shot undermines the single count, Count Three in the jury's instruction, that  the State's own evidence and theory of the offense did not positively disprove and discount, namely, that Fratta aided and abetted Guidry in the commission of murder in return for remuneration or during the course of a burglary.  In light of standards the Supreme Court developed in *Kyles v. Whitely*, 514 U.S. 419 (1995), the Barlow print evidence easily supports a colorable argument that the withheld evidence would have affected the jury's deliberation in this case. The Barlow evidence clearly puts the case against Fratta in an entirely different light and shakes confidence in the verdict. *Id.*

### 4.  Fratta has not been intentionally dilatory.

State action that prevented Fratta from discovering the basis for his present Brady claim is responsible for non-exhaustion in this case.  Furthermore, Fratta raises this claim in his initial federal habeas proceedings taken off his second retrial.  Fratta has not raised this claim for the purpose of delay, but because it is a viable claim concerning vital issues of fundamental fairness.

### CONCLUSION

Consequently, this Court should stay federal proceeding so that Fratta can exhaust this important cause of action in state court.

## IV.   REPLY TO RESPONDENT'S ANSWER AND MOTION FOR SUMMARY JUDGEMENT ON INEFFECTIVE OF COUNSEL CLAIM SIX

### A.  Failure to prevent false middleman testimony.

Fratta initially argued that Gipp testified falsely that Prystash told her he was a middleman but trial counsel failed to prevent this testimony.   Respondent maintains that the testimony as not false. RSMJ at 56.  However, the question is moot as far as IAC goes.  Fratta **concedes** that trial counsel effectively challenged the State's attempt to interject testimony that Prystash was a middle man. See 27 RR 204, 205, 206-207, 217. The trial court admonished the jury several times because of trial counsel's objections that they were not to consider testimony to this effect. *Id.* Juries are presumed to follow instructions. *See Francis v. Franklin*, 471 U.S. 307 (1985).  No evidence was before the jury to the effect that Prystash was a middle man.

### B.  Gipp's representations she had personal knowledge of murder and getaway vehicle.

Fratta complained that trial counsel failed to object to Gipp's testimony that she knew "they," meaning all defendants, "killed her," meaning Farah.  He complained too that trial counsel

did not object to Gipp testifying Prystash's care matched the description of the getaway vehicle. Respondent maintains that Gipp recognized the murder victim and that the plot to kill her had been carried out. RSMJ at 57. Respondent also says that Gipp had personal knowledge of Prystash's vehicle and therefore could testify it matched the descriptions given in news broadcasts the night of the murder. *Id.* Respondent is mistaken on several scores, and the mistakes helps illustrate materiality of the error.

What was objectionable about Gipps testimony was the implication she knew that all three co-defendants had killed Farah. This was an inference based on hearsay from Prystah. The trial court had ruled that hearsay implicating others besides Prystash could not be introduced through Gipp. The testimony created the impression that Gipp had personal knowledge of plan involving Fratta, which she did not, and personal knowledge that the murder took place in accordance with that plan. This insinuation in the context of an exceedingly thin case was material. Similarly, testimony about a match between Prystash car and getaway vehicle was based on a double hearsay, because the description came from new persons relating what other witnesses said. But Gipp's testimony created the harmful impression that she personally knew Prystash's car matched the getaway vehicle.

C.   **Failure to object to introduction of note with serial number of a gun traced to Fratta and found on Guidry.**

Gipp testified that she wrote down the serial number of the gun Prystash returned with the night of the murders. She turned the scrap over to the prosecution. Trial counsel did not object to its admission. Fratta faulted trial counsel for not protesting the note was hearsay inadmissible under any exception. *Amended Pet.* at 81.

42

Respondent concedes that the note was not admissible as a business record.  RSMJ at 58. However, Respondent argues that information could be admitted, namely, by having Gipp read the serial number, pursuant to Texas Rule of Evidence 803(5) and that Fratta acknowledged as much. *Id.*   However, Respondent ignores Fratta's complimentary argument that if trial counsel had challenged Gipp's changing description of the gun she says she saw Prystash return with she would not have been able to read into the record, as a recorded recollection, the serial number she claimed to have written down proximate in time to the crime.

 Initially, Gipp told police officers that the gun she got the serial number off was a silver gun with wooden handles, which she first saw Prystash with months earlier. 27 RR 71, 166.  At trial Gipp, once again, said she recalled the gun had wooden grip.  *Id.* a 70.  She then switched to asserting that the gun was a black revolve, fitting the Charter Arms revolver traced to Fratta. *Id.* at 27 RR 167.   Under the rules of evidence, recorded recollections are not permitted under circumstances where the record's preparation cast doubt on its trustworthiness. *See* TEX. R. EVID. 805(5)(C).   Such is the case, where the witness claims the record is of information from a source she described initially, when memory was fresher, as being a completely different from the source the witness now says she took information down from.

Respondent's argument that the information about the Charter Arms was admitted into evidence through Lex Bacquer and Sergeant Moore. RSMJ at 59.  However, that is what made Gipp's testimony harmful. Moore testified that the gun recovered from Guidry when he was arrested for robbery months after the murder had a serial number traced to a purchase by Fratta. Gipps testimony placed that gun in Prystash's hands the night of the murder.  Without that testimony, the lone filaments connecting Fratta, Prystash and Guidry that the State had would have

been rent asunder.   Respondent's assertion that allowing the State to "highlight[] the connection to Fratta is reasonable trial strategy" is incomprehensible.

## V.   REPLY TO RESPONDENTS ARGUMENT FOR DISMISSAL OF INEFFECTIVENESS OF COUNSEL CLAIM EIGHT

### A.   Respondent answer proves a factual controversy exists.

Respondent does not contest Fratta's evidence that Gipp reached a deal for her testimony that promised her far more in the way of immunity than her testimony at trial lead jurors to believe the State had offered. *See Amended Pet.* at 106-107.   Instead, Respondent maintains that trial counsel made a strategic decision not to impeach Gipp with the extent of the deal she made.  RSMJ at 63.

Whether trial counsel acted strategically is a factual matter.  Respondent's answer to Claim Eighth demonstrates at minimum that the facts are controverted and may require an evidentiary hearing to resolve.  The alternative is to find, based on the pleadings so far, that trial counsel did not have a **reasonable**  trial strategy, as there is no conceivable rationale for not discrediting a key witness with evidence that she is testifying to avoid prosecution as an accomplice in the capital murder for which the defendant stands trial.

### B.   Respondent contests prejudice with pure speculation.

Respondent's answer to Fratta's demonstration of harm is to suggest that impeaching Gipp would result in testimony harmful to Fratta.  RSMJ at 64.   This hardly makes sense.  On cross, reasonably competent counsel would confine Gipp to answering pointed questions about her deal with the State.  Respondent's idea that Fratta would be harmed by impeaching Gipp about the deal with the State that she and her attorney brokered in exchange for testimony is at best purely speculative. Summary dismissal is not warranted.

**VI.   REPLY TO RESPONDENT'S ARGUMENT FOR DISMISSAL OF FRATTA'S TENTH CLAIM FOR RELIEF.  (RSMJ at 66-67 – Amended Pet. at 117-119)**

Fratta argued that trial counsel should have impeached the credibility of hearsay declarant Prystash with evidenceof his  mental illness and mental disabilities and criminality.  *Amend Pet.* at 118-119. Respondent counters that "in a defect that is fatal to his claim, Fratta fails to show how Gipp's testimony could have been impeached."  RSMJ at 66.  Respondent further maintains that Fratta's allegations that Prystach suffered from mental illness, disabilities and possible fetal alcohol syndrome" are speculation because they are based on federal habeas pleadings Prystash filed in April 28, 2005.  *Prystash v. Stephens*, no. 4:05-cv-01546 (S.D.Tex.), Dkt. 1-1 at 32-33.

Far from speculative, Prystash's petition for a writ of habeas corpus is a sworn pleading filed on Prystash's behalf.  The statements in the Petition are supported by a psychological opinion that Prystash's neurological functioning may be impaired by Prystash's history of drug abuse – abuse of steroids and human growth hormones – and his history of traumatic accidents and head injuries. Ex '2' (Letter of Anne Wheeler, PhD., date May 24, 1996).  Sworn testimony of relatives at Prystash's trial documented Prystash's mother's heavy drinking during gestation, making fetal alcohol syndrome a distinct probability rather than a speculative possibility.

**VII.   REPLY TO RESPONDENTS ARGUMENT FOR DISMISSAL OF FRATTA'S TWELFTH CLAIM FOR RELIEF.  (RSMJ, pp. 70-75; Amend Pet. 126-143).**

The State at trial sought to admit, through Farah's attorney, Jim Beeler,  testimony Farah gave at a deposition nearly a year before the murder about the sexually deviant practices Fratta had her engage in.  Defense counsel objected that the testimony was irrelevant, inflammatory and inadmissible hearsay.  The State argued Beeler's testimony was not hearsay because it was not admitted to show the truth of the matter asserted, but rather to show motive for the murder; the

idea being that Fratta was so angry and upset that Farah would testify to his deviant practices at a trial in their divorce case that he arranged to have her killed.

Any reaction by Fratta at the deposition was too distant in time from the murder to support the State's motive argument; however, the trial court conditionally admitted Beeler's testimony predicated on the State sponsoring a witness named James Ray Thomas who, the State represented, was supposed to establish that Fratta remained upset about Farah's deposition testimony regarding Fratta's deviant sexual practices long after the deposition, and proximate to the murder.

Beeler testified first, but Thomas could not recall the content of the conversation he had with Fratta that the state hoped would link up Beeler's testimony to an emotional reaction by Fratta proximate to the crime. Thomas in fact could not recall the approximate time that he spoke with Fratta and saw his reaction. Trial counsel did not object and request a mistrial on grounds that the conditions for admitting Beeler's testimony had not been met as promised.

## A.  Deference to TCCA's direct appeal decision must be withheld.

*Trevino v. Thaler*, provides the procedural justification for raising Fratta's Claim Twelve. Respondent raises procedural default and exhaustion argument, but fails to support these defenses separately from an attack on the merits of Fratta's claims. RMSJ at 70.  Central to Respondent's argument for dismissal is the contention that the TCCA resolved the error underlying Fratta's IAC claim against Fratta.

According to Respondent, the TCCA determined on direct appeal that Farah Fratta's hearsay statements were admissible, thereby "doom[ing]" Fratta's federal habeas claim. RSMJ at 74. However, the TCCA considered a different claim, not Fratta's present IAC claim.

Furthermore, with respect to this present IAC claim, the TCCA's opinion rests on an unreasonable determination of fact. Deference under 28 U.S.C. § 2254(d) does not apply.

The TCCA determined that information was admissible upon finding that "a friend of Fratta's," by which the TCCA means Ray Thomas, "**testified that appellant told him that he was angry about these allegations, which he said were false, and he did not want Farah to repeat them in open court.**" However, this entirely untrue.  As Respondent concedes, Ray Thomas testified that he did not have an independent recollection Fratta mentioning deviant sexual acts or Farah's deposition testimony.  However, Thomas was the lynchpin to the state's efforts to link demeanor evidence supposedly indicative of motive to Farah's deposition testimony.  The deposition itself was so far removed in time from Farah's murder that the State did not even propose that the Beeler's testimony about Fratta's reactions during deposition was itself proof of a motive.

The TCCA also erroneously found that Fratta made limited disclosures of his sexually deviant practices to two other persons, and "did not widely share this information."  *Id.* at *10. This finding was essential to the TCCA's determination that Beeler's testimony about Farah's statements at a deposition was admissible to show motive. *Id.*  The State's justification for introducing Beeler's testimony was that  Fratta was so embarrassed and concerned that his sexual predilections would be exposed in open court that he arranged for his wife's murder to prevent her from testifying.   However, if Fratta unabashedly broadcast his sexual predilections and performances with Farah the State's theory would be revealed to be the obvious sham it actually was.  (Instead of allegedly paying a jeep and $1000 dollars to have his wife murdered, Fratta, after all, could have prevented Farah from testifying in open court simply by not contesting the divorce!).

Police reports attached to Fratta's Amended Petition demonstrates that Fratta openly discussed his sexual predilections, as well as the sexual activities Farah complained of in deposition, with a wide range of people, including co-workers. The State's representations that Fratta kept his sexual preferences close to the vest were therefore false, and known by the State to be false. The TCCA's determination that the evidence of sexual misconduct was relevant rests squarely on this false assumption, and therefore on an unreasonable determination of the facts.

The TCCA's decision is based on a substantially different and fictitious factual foundation than the trial IAC claim that Fratta brings pursuant to *Trevino*. This Court therefore does not owe deference under the AEDPA to the TCCA's decision. Indeed, the claim the TCCA decided is a fundamentally different claim because of the difference in core facts.

### B. Respondent's Answer is based on distortions of the record.

There should be no controversy. A witness cannot testify that a defendant became angry or emotional upon hearing specific statements or discussing specific matters if the witness has no independent recollection of those specific statements or discussions.

Respondent nonetheless attempts to buck the foregoing logic. **First,** Respondent mistakenly represents the record. According to Respondent, the record shows "Fratta told Thomas he was mad at Farah because she said in a deposition he wanted her to get on top of him and defecate in his mouth and he would eat it." RSMJ at 5 (citing 25 RR 123-24). However, Thomas was the only person who could testify to this, and Thomas denied having any such recollection. Respondent is citing, as fact, the content of the questions the prosecutor tried get Thomas to answer. Prosecutors' questions are not evidence. **Second**, Respondent says that "Thomas admitted that Fratta was upset about Farah's allegation of his "**deviant** sexual behavior" and said that Fratta denied such behavior." 25 RR 122-25. Respondent says that this is all that is needed in a death

48

penalty case to justify admitting hearsay testimony of "graphic specifics" detailing coprophagia and urophilia forced upon the victim long before the crime, which even the TCCA recognized "could potentially affect the jury in an irrational way." *See Fratta v. State*, 2011 WL 4582498, *9 (Tex. Crim. App. 2011) (unpublished)

Despite review of his previous testimony and the prosecutor's leading questions, Thomas repeatedly denied any recollection of Fratta mentioning or referring to any of the "deviant sexual behavior" that that State introduced into evidence through Beeler.  27 RR 123, 125. Thomas could only recall Fratta mentioning "some kind of sexual behavior [Fratta] was upset about" and denying an unidentified "sexual habit."  *Id.* at 125.   But Thomas could not remember even approximately the timing of the conversation from which he retained this nebulous memory of "some kind of sexual behavior."

> 12 Q. And do you recall how long before her murder it
> 13 was that y'all had this conversation?
> 14 A. No, I don't.

27 RR 124.

The State could not link up as promised Beeler's detailed testimony about grotesquely inflammatory sexual acts with a reaction or emotional display by Fratta in order to justify admitting **Beeler's** testimony as evidence of a motive.  Nor could the State link even nebulous testimony that Thomas gave about Fratta being upset about some "sexual behaviors" and denying some "sexual habits" to a point in time proximate to the crime.   However, trial counsel failed to object and demand that Beeler's testimony be stricken and a mistrial declared after it was apparent that Thomas could not recollect Fratta discussing or reacting to anything like the conduct Beeler said

Farah described during deposition nearly year before her death, nor could Thomas remember even the approximate time when he spoke with Fratta.

### C. In light of the State's insufficient evidence, Beeler's testimony was highly prejudicial.

Respondent argues that the trial courts instruction "minimized the likelihood that the jury would improperly consider the evidence" of sexual misconduct as anything but evidence of Fratta's motive. However, what prejudiced Fratta is that jurors were instructed  they could consider Beeler's testimony as evidence that Fratta's had a motive to have Farah killed, and that the motive was to prevent Farah from testifying about his sexual deviances. There is no reasonable ground from which to contest that Beeler's inflammatory trestimony affected jury deliberations. Given the State's vaporous case, as demonstrated by Fratta's insufficiency of the evidence arguments, testimony that Fratta had deviant motive, intertwined with testimony so inflammatory that "it could potentially affect the jury in an irrational way," was extremely prejudicial.

### VIII. REPLY TO RESPONDENT'S ARGUMENT FOR DISMISSING FRATTA'S FOURTEENTH CLAIM FOR RELIEF (RSMJ, pp. 77-78; Amended Pet., pp. 146-150)

Federal and state courts have been tied up with Fratta's, Guidry's and Prystash's cases for years because of prosecutorial misconduct. This Claim presents another example of misconduct. Prosecutors introduced a frame – a still photo – from a police videotape that was shot months after Farah's murder. The frame showed Guidry by a cell phone at Davis Food City, a store near Farah's residence. Prosecutors expressly represented that they would not leave the impression that Guidry directed law enforcement to the Davis Food City pay phone.[4]  However, that was the entire purpose

---

[4]  The reason the State had to make these representations is well known to the federal courts of the Southern District. Police lied to Guidry to secure a confession and secure his cooperation with their investigation, which included acquiescence to a videotaped walk through intended to document Guidry's actions at the time of the crime. That walkthrough included videotaping Guidry at Davis Food City. The

of having Guidry in the photo and referring at trial to the coterie of police officers that accompanied him during the video shoot.

In the Amended Petition Fratta complained that trial counsel were ineffective because they failed raise due process objections to the introduction of evidence placing Guidry at the Davis Food City store to which Prystash had placed phone calls the night of the murder using Mary Gipp's cell phone. *Amended Pet.* at 146-47. Linking Guidry to the location and calls was a primary means by which the State had implicated Guidry in the murder.  On retrial, ballistic testimony failed to link Guidry to the scene, as did eyewitness testimony,  which was practically non-descript. Ms. Hoelscher, Farah's across the street neighbor, said she saw a black male fleeing the Farah's property; the sighted suspects stature did not match Guidry's. Other than that, the State had testimony from Gipp that Guidry was in Prystash's company at an apartment complex on the night of the murder, but no testimony he left or returned to the apartment with Prystash.

Respondent counters that "[t]he crux of Fratta's claim is not really an ineffective assistance of counsel claim, but that the prosecutor manufactured evidence."  RSMJ at 77. According to Respondent, the evidence was not manufactured, but properly admitted to show that Guidry went with officer to check the pay phone number at Food City." *Id.* Respondent therefore concludes that prosecutor's closing argument was unexceptional because she was "properly referencing admitted testimony." *Id.* at 78.

---

lie that induced the confession and cooperation involved police telling Guidry that his appointed attorney had authorized Guidry to talk to police.  When this came to light Judge Vanessa Gilmore had to order habeas relief.  The Fifth Circuit upheld relief.

**A.  Respondent attempt to take the claim out *Trevino*'s ambit fails.**

Respondent is correct. The crux of Fratta's Fourteen Claim for relief is prosecutorial misconduct, namely, the intentional sponsoring of evidence calculated to mislead the jury into believing the State had legitimate evidence showing Guidry was near the crime scene, when the state did not. This crux is the underlying error that trial counsel failed to prevent or preserve by raising a due process violation resulting in IAC.  *See Amend. Pet.* at 146-147.  The complained of error it therefore trial counsel IAC, which State habeas should have raised but failed to.

**B.  The state was not entitled to mislead the jury.**

Due process does not just preclude outright perjury, but precludes as well evidence and argument that, though, technically correct leaves the jury with a false impression.  See United States v. Bagley, 473 U.S. 667, 684 (1985).  Prosecutors used the post-murder video to place Guidry near and at the crime scene. The misuse was calculated.  Billingsley testified regarding the distance between Davis Food City and Farah's residence and the time it would take to get from one place to the other.  The State even slipped in, unnoticed, that police had taken Guidry to Farah's residence.

> 13 Q. (By Ms. Bradley) You say that the cell phone
> 14 records reflect that phone calls were made to the pay
> 15 phone at Davis Food City, correct?
> 16 A. Correct.
> 17 Q. If a person called the individual sitting at a
> 18 pay phone -- or an individual sitting at a pay phone at
> 19 Food City, how long would it take for that person to get
> 20 back to or get to Farah Fratta's residence?
> 21 A. Probably 30 seconds.

27 RR 33.

> 1 Q. Now, when you went to the location -- to Farahf
> 2 Fratta's house that night, who was present at the
> 3 location?

52

> 4 A. The same people that were present at Davis Food
> 5 City. Myself, Howard Guidry, Detective Jim Hoffman,
> 6 Detective Bob Tonry, and Deputy Mitch Marion.

Guidry was simply not relevant to any legitimate purpose the State may have had. For example, calculating the distance and travel time between residence and Davis Food City did not require a photograph of Guidry. Nor did the State need Guidry to assist police with their description of the Farah's home's premises. The sole purpose was to convey the impression that Guidry had led police to the Food City and to the crime scene.  Closing argument bore this out, as the State repeatedly urged that Guidry had led cops to the payphone at Davis Food City and through the premises of Farah's home.

Trial counsel erred in allowing any testimony or photographs documenting Guidry's post arrest presence near the crime scene into evidence even on condition that the State not elicit testimony from police witnesses that Guidry directed them.  In light of the complete lack of evidence otherwise showing that Guidry was at the crime scene, the State's misrepresentations were extremely prejudicial, and trial counsel's failure to properly object therefore ineffective under *Srickland v. Washington,* 466 U.S.668 (1984).

Wherefore, Petitioner respectfully requests that that this Court deny Respondent's motion for summary judgement in all respects, and grant Petitioner's cross motion for summary on Counts One and Two, or that the Court stay and abate proceedings so he can exhaust his Fourth Claim for relief (*Brady*) in state court pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).

Respectfully submitted,

HILDER & ASSOCIATES, P.C.

By:    /s/ *James Rytting*
        James Rytting
        State Bar No. 24002883
        819 Lovett Boulevard
        Houston, Texas 77006
        Telephone (713) 655-9111
        Facsimile (713) 655-9112

        ATTORNEY FOR PETITIONER,
        ROBERT ALAN FRATTA

## <u>CERTIFICATE OF SERVICE</u>

On May 4, 2017, a copy of the foregoing Reply and Cross Motion was served upon Respondent by ECF filing.

        /s/ *James Rytting*
        James Rytting