# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT ALAN FRATTA,** | § | |
| | § | |
| **PETITIONER,** | § | |
| **V.** | § | |
| | § | |
| **BOBBY LUMPKIN, DIRECTOR** | § | **No. 4:13-cv-03438** |
| **TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE,** | § | |
| **INSTITUTIONAL DIVISION,** | § | **CAPITAL CASE** |
| | § | |
| **RESPONDENT.** | § | |

---

## PETITIONER'S OPPOSED MOTION TO REOPEN THE JUDGMENT

---

MAUREEN FRANCO
Federal Public Defender,
Western District of Texas
TIVON SCHARDL
Chief, Capital Habeas Unit
JOSHUA FREIMAN
Assistant Federal Public Defender
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)

JAMES RYTTING
State Bar No. 24002883
819 Lovett Boulevard
Houston, Texas 77006
Tel. (713) 655-9111
Fax (713) 655-9112

*Counsel for Petitioner*

October 12, 2020

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................iii

MOTION TO REOPEN THE JUDGMENT ...........................................................................1

BRIEF IN SUPPORT ..............................................................................................................2

I.   STATEMENT OF THE ISSUES PRESENTED ...........................................................2

II.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .........................2

III. RULE 60(b)(6) STANDARD .........................................................................................3

IV.  SUMMARY OF THE ARGUMENT.................................................................................3

V.   ARGUMENT ...................................................................................................................5

   A.   The decision to default Mr. Fratta's insufficiency and fatal variance claims should be
   reconsidered.....................................................................................................................5

      1.   Mr. Fratta has diligently pursued the claims for which he seeks reconsideration. ................5

      2.   Intervening Supreme Court case law concerning a defendant's control over his criminal
      case casts grave doubt on the application of Texas' rule against hybrid representation in this
      case...............................................................................................................................8

      3.   The nature and strength of Mr. Fratta's insufficiency of the evidence and fatal variance
      claims militate in favor of reconsidering the procedural default. ....................................11

   B.   Recent Supreme Court authority justifies reviving Mr. Fratta's Rule 59(e) motion. .................13

   C.   This motion should not be reclassified as a successive petition...................................................16

CONCLUSION........................................................................................................................17

CERTIFICATES OF CONFERENCE AND SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Ackermann v. United States*,
   340 U.S. 193 (1950) .................................................................................................................3

*Balentine v. Thaler*,
   626 F.3d 842 (5th Cir. 2010) ................................................................................................3

*Banister v. Davis*,
   140 S. Ct. 1698 (2020) ...............................................................................................2, 14, 15, 16

*Ex parte Barbee*,
   No. WR-71,070-03, 2019 WL 4621237 (Tex. Crim. App. Sept. 23, 2019) .................................9, 10

*Battaglia v. Stephens*,
   824 F.3d 470 (5th Cir. 2016) ................................................................................................9

*Buck v. Davis*,
   137 S. Ct. 759 (2017) ...........................................................................................................3

*Ex parte Castillo*,
   No. WR-90,880-02, 2020 WL 2052905 (Tex. Crim. App. Apr. 29, 2020) ......................................10

*Ex Parte Chance*,
   439 S.W.3d 918 (Tex. Crim. App. 2014) ................................................................................8

*Clark v. Davis*,
   850 F.3d 770 (5th Cir. 2017) ..............................................................................................16

*Crutsinger v. Davis*,
   929 F.3d 259 (5th Cir. 2019) ..............................................................................................16

*Diaz v. Stephens*,
   731 F.3d 370 (5th Cir. 2013) .............................................................................................3, 8

*Ex Parte Elizondo*,
   947 S.W.2d 202 (Tex. Crim. App. 1997) ...............................................................................10

*Evitts v. Lucey*,
   469 U.S. 387 (1985) ...........................................................................................................10

*Fratta v. Davis*,
   889 F.3d 225 (5th Cir. 2018) ................................................................................................4

*Fratta v. State*,
   No. AP-76,188, 2011 WL 4582498 (Tex. Crim. App. Oct. 5, 2011) .................................................7

*Garza v. Idaho,*
    139 S. Ct. 768 (2019)............................................................................................*passim*

*Gonzalez v. Crosby,*
    545 U.S. 524 (2005) ...........................................................................................3, 16

*Haynes v. Davis,*
    733 F. App'x 766 (5th Cir. 2018) .........................................................................3

*Herrera v. Collins,*
    506 U.S. 390 (1993)...........................................................................................10

*Jackson v. Virginia,*
    443 U.S. 307 (1979)...........................................................................................11

*Liljeberg v. Health Servs. Acquisition Corp.,*
    486 U.S. 847 (1988) ..........................................................................................3, 5

*Malik v State,*
    953 S.W.2d 234 (Tex. Crim. App. 1997)..............................................................5

*McCoy v. Louisiana,*
    138 S. Ct. 1500 (2018) ...........................................................................2, 8, 9, 10

*Roe v. Flores-Ortega,*
    528 U.S. 470 (2000) ............................................................................................9

*Seven Elves, Inc. v. Eskenazi,*
    635 F.2d 396 (5th Cir. Unit A 1981) ................................................................3, 11

*Turner v. State,*
    570 S.W.3d 250 (Tex. Crim. App. 2018)............................................................10

*United States v. McDaniels,*
    907 F.3d 366 (5th Cir. 2018) .............................................................................16

*Williams v. Thaler,*
    602 F.3d 291 (5th Cir. 2010) .............................................................................14

**Constitutional Amendments, Statutes, and Rules**

U.S. Const. amend. VI ..............................................................................................11

Antiterrorism and Effective Death Penalty Act of 1996 ...........................................15, 16, 17

18 U.S.C. § 3599(f)....................................................................................................16

28 U.S.C. § 2244(b).................................................................................................14, 15, 16

Fed. R. App. P. 4.......................................................................................................15

Fed. R. Civ. P. 59(e)........................................................................................................*passim*

Fed. R. Civ. P. 60(b) ......................................................................................................*passim*

Tex. Code Crim. Proc. art. 11.071................................................................................7, 10

Tex. Code Crim. Proc. art. 11.071, § 5.................................................................................7

TO THE HONORABLE ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 60(b), Robert Alan Fratta, through undersigned counsel, files this motion to reopen judgment, with brief in support, as follows:

## MOTION TO REOPEN JUDGMENT

1.      Mr. Fratta respectfully moves this Court to reopen its judgment to allow for reconsideration of Mr. Fratta's insufficiency of the evidence and fatal variance claims.

2.      Numerous factors justify reopening the judgment in this capital case. First, the Court barred relief on substantial claims through which Mr. Fratta would have shown his innocence of the capital offenses with which he was charged. Second, reopening is warranted in light of the extraordinary history of Mr. Fratta's diligent *pro se* efforts to prove the state's evidence was insufficient to convict him of capital murder. Third, significant changes in the law recognizing the autonomy and control defendants have over their cases call into question this Court's enforcement of the state procedural bar preventing merits consideration of Mr. Fratta's claims. Fourth, to the extent this Court reached the merits of Mr. Fratta's claims in the alternative, recent Supreme Court law makes clear that prior Fifth Circuit precedent deprived Mr. Fratta of the opportunity to ask this Court to revisit its merits ruling under the important and available avenue of Federal Rule of Civil Procedure 59(e).

4.      Direct appeal to the Texas Court of Criminal Appeals (CCA) was the one meaningful opportunity Mr. Fratta had after trial to demonstrate his legal innocence; however, his appellate counsel in state court stymied Mr. Fratta's efforts to obtain merits review in both state and federal systems.  Since this Court dismissed Mr. Fratta's petition, the Supreme Court, albeit in a different context, recognized that a defendant who desires to maintain his innocence has a right to counsel who will do so.  In light of intervening Supreme Court law, with regard to insufficiency claims, a rule that prevents defendants from maintaining their innocence, whether at trial or on appeal, cannot be an adequate state law ground for defaulting insufficiency of the evidence claims.

1

5.      No procedural barrier prevents this Court's consideration of this meritorious motion. Moreover, because this motion alleges serious procedural defects in the adjudication of his claims in federal habeas, the motion is not an improper successive application.

6.      This Court should therefore reconsider its decision to default Mr. Fratta's insufficiency and closely related fatal variance claims and, instead, reach the merits of those claims by reopening the judgment and considering those claims, as presented in Mr. Fratta's timely filed, but *pro se*, motion under Rule 59(e).

## BRIEF IN SUPPORT

## I.    STATEMENT OF THE ISSUES PRESENTED

1.    Whether recent Supreme Court decisions expanding the rights of the criminally accused to control their cases, *Garza v. Idaho*, 139 S. Ct. 768 (2019), and *McCoy v. Louisiana,* 138 S. Ct. 1500 (2018), justify reconsideration of this Court's decision to default Mr. Fratta's insufficiency and fatal variance claims.

2.    Whether the Supreme Court's decision in *Banister v. Davis*, 140 S. Ct. 1698 (2020), by abrogating Fifth Circuit precedents, now permits this Court to consider Mr. Fratta's timely filed Rule 59(e) motion.

3.    Whether Mr. Fratta's case presents circumstances sufficiently extraordinary to warrant reopening the judgment under Fed. R. Civ. P. 60(b)(6).

## II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

In May 2009, a Texas jury found Mr. Fratta guilty of capital murder and sentenced him to death. On direct appeal, Mr. Fratta asked his counsel to challenge his conviction on grounds of legal insufficiency and fatal variance between the indictment and the jury's charge. His counsel refused, and the Texas Court of Criminal Appeals (on direct appeal) and this Court (in federal habeas) both refused to review the claims on the merits, pursuant to a state procedural rule barring hybrid representation. *See* ECF No. 80 at 30. Mr. Fratta now moves this court to reopen and reconsider its judgment under Federal Rule of Civil Procedure 60(b)(6) in light of extraordinary circumstances, including significant changes in the law.

2

## III.   RULE 60(b)(6) STANDARD

Federal Rule of Civil Procedure 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case," *Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010) (internal quotation marks and citation omitted). To determine whether "extraordinary circumstances" warrant relief under Rule 60(b)(6), courts consider a variety of factors, including "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 137 S. Ct. 759, 766 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)); *Ackermann v. United States*, 340 U.S. 193, 199 (1950). Other factors are "whether the motion was made within a reasonable time," "whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense," and "whether there are intervening equities that would make it inequitable to grant relief." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. Unit A 1981); *see also Haynes v. Davis*, 733 F. App'x 766, 769 (5th Cir. 2018) (endorsing use of *Seven Elves* factors "as a guide in evaluating the strength of a motion brought pursuant to Rule 60(b)(6)").

A change of decisional law—in combination with other factors—may satisfy the standard for Rule 60(b) relief. *See Diaz v. Stephens*, 731 F.3d 370, 375 (5th Cir. 2013). For instance, when a prisoner has shown reasonable diligence in seeking relief based on a change in procedural law, and when that prisoner can show that there is probable merit to his underlying claims, it would be well in keeping with a district court's discretion under Rule 60(b)(6) for that court to reopen the habeas judgment and give the prisoner the one fair shot at habeas review that Congress intended that he have. *See Gonzalez v. Crosby*, 545 U.S. 524, 541-42 (2005) (Stevens, J., dissenting).

## IV.   SUMMARY OF THE ARGUMENT

Mr. Fratta has been exceptionally diligent in asserting his factual and legal innocence of the crime for which he was convicted. On direct appeal from his conviction, Mr. Fratta insisted that his counsel raise claims challenging the legal insufficiency of the evidence against him and the fatal

variance between the jury instructions and his indictment. Mr. Fratta's appellate counsel refused to raise these claims in his direct appeal. This directly contradicted Mr. Fratta's wishes. Mr. Fratta attempted to litigate these claims through *pro se* pleadings, and simultaneously sought to discharge his counsel, alleging his appellate counsel's conflict of interest and ineffectiveness.

However, on direct appeal, the CCA refused to consider Mr. Fratta's *pro se* supplemental briefs based on the rule that appellant does not have a "right to hybrid representation."  In federal habeas, this Court found that the rule against hybrid representation was an independent and adequate state procedural ground that barred federal review of the merits. *See* Mem. Op. at 30, ECF No. 80, Sept. 18, 2017. (This Court further conducted what it called an "alternate review" of the merits of these claims, *id.* at 64-75, and stated it "would deny" the claims "if" the court were able to review the merits, *id.* at 72, 75. *See* Part V.B below.) The Fifth Circuit agreed and denied Mr. Fratta a certificate of appealability on the question of whether the Texas rule against hybrid representation qualifies as an independent and adequate state law ground.  *Fratta v. Davis*, 889 F.3d 225, 231 (5th Cir. 2018). (The Fifth Circuit did not reach the merits of Mr. Fratta's claims. *See id.* at 233.)

Two recent Supreme Court cases provide expansive readings of the right of criminal defendants like Mr. Fratta to retain control of their cases and insist that counsel pursue claims for their innocence. As a result, the Texas hybrid-representation bar is now in grave doubt, and this Court should reopen its judgment, reconsider its enforcement of the procedural bar, and consider the strong merits of Mr. Fratta's claims *de novo*.

In addition, a significant change in Supreme Court law affords Mr. Fratta a new opportunity to challenge this Court's "alternate" review of the merits of Mr. Fratta's claims based on the arguments raised in his timely Rule 59(e) motion, which this Court did not previously consider.

## V.   ARGUMENT

### A.  The decision to default Mr. Fratta's insufficiency and fatal variance claims should be reconsidered.

#### 1.  Mr. Fratta has diligently pursued the claims for which he seeks reconsideration.

Mr. Fratta's exceptional diligence in pursuing his claims is a factor that strongly favors reconsideration of his claims. *See Liljeberg*, 486 U.S. at 864 n.11 ("Of particular importance, this is not a case involving neglect or lack of due diligence by [the movant].").

#### a.  Direct appeal

On June 16, 2010, Mr. Fratta's appellate counsel, Alan Isbell, filed Mr. Fratta's direct appeal brief. Within a week, in a filing titled an "Emergency Motion for Appointment of Different Counsel to File Supplemental Brief to Direct Appeal," Mr. Fratta alerted the court to the issues that Mr. Isbell omitted:

> Since [Isbell's] appointment last June, I have written numerous letters instructing Mr. Isbell on specific key issues he needs to file/raise on direct appeal; not only because they are vital errors warranting immediate relief by this court, but also that they can be raised in subsequent appeals.  Even my trial attorneys, Randy McDonald and Vivian King had verbally cited some of those issues to me, stating that they should be filed as main issues on direct appeal. . . .  Following are some of the key issues Mr. Isbell has refused to file in his brief: 1) The legal insufficiency of the evidence to sustain a conviction 2) The factual insufficiency of the evidence to sustain a conviction 3) The unconstitutionality of the wording of my indictment versus the addition and change to a "law of parties" wording in the jury charge 4) The unlawfulness of the wording of my indictment versus the addition and change to a 'law of parties' wording in the jury charge 5) The difference between the indictment and jury charge equating to 'fatal material variance' 6) The jury charge being erroneous and necessitating this court applying a 'hypothetically correct' one under *Malik v. State*[, 953 S.W.2d 234 (Tex. Crim. App. 1997)].

ECF No. 61-25 at 3. The Court of Criminal Appeals took no action on Mr. Fratta's motion.

On July 29, 2010, Mr. Fratta filed his Supplement Brief raising the indictment issue. ECF No. 61-66. The State filed a motion to strike Mr. Fratta's brief.  Mr. Isbell did not respond.  Mr. Fratta had to do so, and pleaded for the court to consider his p*ro se* briefs, since, as he explained, "[t]o close the

Courthouse doors on me after all the due diligence I exercised as a result of my attorney's ineffectiveness, incompetence, and refusing to raise those meritorious claims, does not comport with contemporary standards for due process protections." ECF No. 61-18 at 3 (Appellant's Resp. to State's Mot. to Strike, *Fratta v. State*, No. AP-76,188 (Tex. Crim. App. Aug. 25, 2010)).  Again, the CCA took no action on Mr. Fratta's motion requesting the discharge of his counsel and appointment of new counsel, or the State's motion to strike Mr. Fratta's brief.

More than six months after Mr. Fratta submitted his brief, the State filed its answering brief on February 15, 2011. ECF No. 61-63. Still well in advance of the CCA's decision on his appeal, Mr. Fratta submitted two more filings elaborating on his request for new counsel and asking for relief from his counsel's ineffectiveness.  ECF No. 61-41, ECF No. 61-42. On April 13, 2011, Mr. Fratta filed a pleading styled "Appellant's Notification to Court of Ineffective Assistance of Counsel in Direct Appeal and Motion for Court to Act on Appellant's Notification of Ineffective Assistance of Counsel In Direct Appeal."  ECF No. 61-48. Mr. Fratta declared: "This is my official notification to this Court that my court appointed assistance of counsel in Allen C. Isbell is and has been Ineffective." *Id.* at 2. "The PROOF of his ineffectiveness is his INADEQUATE brief filed on 6/16/10, compared with my 12/13/10 pro se Volume One brief, and also my initial 7/29/10 pro se supplemental brief." *Id.* On July 21, 2011, Mr. Fratta filed a "Motion to CCA: Motion for a Request to the CCA and a Hearing to Determine Attorneys' Competence, Effectiveness, and Conflict of Interest for Appointment of New Counsel." ECF No. 61-41. Once more, Mr. Fratta advised the CCA "that Allen Isbell has severely lacked effectiveness in his brief, which also created a conflict of interest between us—and forced me to have to file 2 briefs pro se." *Id.* at 2.

On October 5, 2011, the Court of Criminal Appeals, in affirming Mr. Fratta's conviction and sentence, acknowledged that the CCA had received Mr. Fratta's pleadings and had reviewed their contents, yet refused to consider Mr. Fratta's claims raised in his supplemental brief:

6

> Throughout these proceedings, appellant has filed *pro se* pleadings and
> letters in an attempt to supplement his attorneys' efforts.  Appellant is
> not entitled to hybrid representation.  Thus, we do not address his *pro
> se* points.

*Fratta v. State*, No. AP-76,188, 2011 WL 4582498, at *1 n.2 (Tex. Crim. App. Oct. 5, 2011). This

footnote did not mention—much less discuss—Mr. Fratta's allegations of appellate counsel's

ineffectiveness or conflict of interest, or address his motion to discharge his counsel over a year earlier.

### b.  State habeas proceedings

As a result of Texas's unitary process for handling capital appeals and post-conviction

proceedings, the investigation of Mr. Fratta's Article 11.071 application was underway at the same

time that Mr. Fratta was attempting to raise his indictment claims *pro se* and move for the discharge of

Mr. Isbell. In fact, Mr. Fratta's initial writ application was filed in the state district court on June 21,

2011, *before* the CCA ruled on Mr. Fratta's direct appeal.  Mr. Fratta persisted in trying to have the

indictment issues raised in his Article 11.071 proceedings, along with an attack on his appellate

counsel's ineffectiveness for failing to raise the claim.  ECF No. 61-112 (September 13, 2012 (Pro se):

Supplement to 11/16/11 Pro Se Motion to Dismiss 11.071 Counsels' Filing).

Mr. Fratta's efforts and rationale for proceeding *pro se* in 11.071 proceedings were expressed

in essentially the same terms and with the same clarity as on direct appeal. As before, Mr. Fratta's sole

and obvious purpose was to raise his insufficiency and fatal variance claims.  The Texas courts had no

problem discerning Mr. Fratta's objectives and now granted his request to proceed *pro se*, but only did

so at a stage when Mr. Fratta's efforts to raise the claims would be futile. That is, Mr. Fratta had no

recourse to amend the initial 11.071 application; any claims he added would be addressed as

subsequent applications that must meet strict abuse of the writ standards, *see* Tex. Code Crim. Proc.

art. 11.071, § 5. (Mr. Fratta attempted to show his counseled 11.071 application was so deficient as to

be a non-application, *see* ECF No. 61-112 at 20, but no court acknowledged or ruled on Mr. Fratta's

motion.) In any case, Mr. Fratta's claims may not have been cognizable in state habeas proceedings. *See Ex Parte Chance*, 439 S.W.3d 918, 923 (Tex. Crim. App. 2014).

> **2. Intervening Supreme Court case law concerning a defendant's control over his criminal case casts grave doubt on the application of Texas' rule against hybrid representation in this case.**

In two recent cases, *McCoy v. Louisiana*, 138 U.S. 1500 (2018), and *Garza v. Idaho*, 139 U.S. 768 (2019), the Supreme Court changed the law governing the attorney-client relationship in criminal cases, both at trial and on direct appeal. In light of these cases (and Texas courts' reception of their holdings), the procedural obstacle to this Court's review of Mr. Fratta's claims should be set aside. *See Diaz*, 731 F.3d at 375.

Both *McCoy* and *Garza* shed important new light on counsel's obligations and show that "a defendant need not surrender control entirely to counsel" in exercising his right to counsel. *McCoy*, 138 S. Ct. at 1508. In *McCoy*, the Court held that it was improper for counsel to admit his defendant's guilt when the client had expressed his desire to maintain his innocence, even when counsel believed admitting guilt was the best strategy to help his client avoid the death penalty. *Id.* at 1512. The Court confirmed that counsel's role is as an agent of the client: "an assistant, however expert, is still an assistant." While counsel may make decisions about trial management, "some decisions are reserved for the client—including whether to . . . forgo an appeal" and whether "to assert innocence." *Id.* at 1509 (internal quotations omitted).

The next Term, the Court decided *Garza*. In *Garza*, the defendant signed an appeal waiver that caused him to forfeit a number of his appellate claims, but he "continuously reminded" his attorney through "phone calls and letters" that he wished to file a notice of appeal anyway. 139 S. Ct. at 743. Garza's attorney did not file an appeal, because he believed "an appeal was problematic" given that Garza had already signed an appeal waiver. *Id.* The Court held that the attorney was *per se* ineffective for failing to file a notice of appeal, because "while signing an appeal waiver means giving up some,

many, or even most appellate claims, some claims nevertheless remain." *Id.* at 745. This extended the Court's holding in *Roe v. Flores-Ortega*, in which the Court held an attorney is *per se* ineffective for ignoring a defendant's request to file a waiver of appeal. 428 U.S. 470, 480 (2000).

The principles of *McCoy* and *Garza* should inform this Court's application of the procedural bar at issue here.  Mr. Fratta insisted on his actual and legal innocence.  As in *McCoy*, Mr. Fratta objected loudly, frequently, and consistently to his attorney's refusal to argue his innocence, and sought to discharge his attorney because of it. Moreover, like a trial, direct appeal was Mr. Fratta's only opportunity in the state system, for him to urge that the evidence against him was legally insufficient.  Mr. Fratta briefed the law and the facts adequately for his attorney. The claims in no sense distracted from any other appellate claim that his counsel intended to raise. In fact, arguing the insufficiency of the evidence would have enhanced the chance of demonstrating error on the claims that counsel did raise.

Under these circumstances, counsel's refusal to raise insufficiency claims willfully damaged Mr. Fratta's prospects on appeal, and signaled to the courts that counsel believed the State's evidence of guilt was so substantial that an insufficiency claim was not colorable. In other words, counsel and Mr. Fratta did not have "strategic disputes" about raising a particular claim in a particular way (which might be within the scope of counsel's discretion to decide), but "intractable disagreements about the fundamental objective of the defendant's representation," which required counsel's deference to the informed judgment of the defendant. *McCoy*, 138 S. Ct. at 1510.  *Cf. Battaglia v. Stephens*, 824 F.3d 470, 474 (5th Cir. 2016) (post-conviction counsel "abandoned" the client with respect to decision not to pursue competency-to-be-executed claim, even if counsel "continued to represent" the client "on other matters").

The reception of *McCoy* and *Garza* by Texas courts underscores the significance of these cases. In *Ex parte Barbee*, No. WR-71,070-03, 2019 WL 4621237 (Tex. Crim. App. Sept. 23, 2019), the Court

of Criminal Appeals stayed the execution of a defendant who alleged that his counsel improperly overrode the defendant's right to insist that counsel maintain his innocence. *Id.* at *2. The *Barbee* order requested further briefing on the scope and applicability of *McCoy*'s holding. *Id.* In another case, the Court of Criminal Appeals vacated the capital murder conviction of a defendant who had made "express statements of [his] will to maintain innocence." *Turner v. State*, 570 S.W.3d 250, 276 (Tex. Crim. App. 2018). Finally, the Court of Criminal Appeals has shown its willingness to enforce *Garza*. *See Ex parte Castillo*, No. WR-90,880-02, 2020 WL 2052905, at *1 (Tex. Crim. App. Apr. 29, 2020) (remanding for fact-finding where "Applicant contends that trial counsel failed to file a notice of appeal and explain that if Applicant went to trial, he could request a lesser-included offense instruction on deadly conduct.").

McCoy* and *Garza* significantly changed the scope of the rights of defendants who are intent on maintaining innocence.  In capital cases, arguing insufficiency is often the only vehicle whereby a client can maintain his innocence after trial. Under Texas law, free standing claims of innocence are cognizable, but require the type of proof that cannot be marshalled or presented on direct appeal.  *Ex Parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1997). Federal courts do not consider actual innocence to be a constitutional claim.  *See Herrera v. Collins*, 506 U.S. 390, 398 (1993) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."). Direct appeal, therefore, in virtually every case, is the only forum defendants have post trial for litigating innocence.  In Mr. Fratta's state case, his appellate counsel, in tandem with the Texas courts, prevented Mr. Fratta from raising this vital constitutional claim.  In light of *McCoy* and *Garza*, the equitable powers this court possesses under Rule 60(b) justify reconsideration of the decision to default Mr. Fratta's insufficiency claims.

Adding to the weight of equitable considerations, state habeas counsel should have claimed under *Evitts v. Lucey*, 469 U.S. 387 (1985), that appellate counsel was ineffective for not raising Mr. Fratta's

insufficiency and variance claims.  Mr. Fratta repeatedly asked state habeas counsel to do this, and brought his refusal squarely to the attention of the Texas courts. The state courts granted Mr. Fratta's motion to proceed *pro se* in state habeas proceedings, but did so only after appointed state habeas counsel filed a state habeas application under Tex. Code Crim. Proc. art. 11.071 on Mr. Fratta's behalf that contained only punishment-phase issues.  At that point, the right to proceed *pro se* was meaningless because, under Texas law, once an 11.071 application is filed, all subsequent attempts to raise constitutional claims are deemed successor applications. Importantly, prisoners are not entitled to counsel to litigate successors, and the type of claims Mr. Fratta wanted to raise are not cognizable because of abuse of the writ standards. *See* Part V.A.1.b above.

At the stage of proceeding when it would have been appropriate to litigate insufficiency and variance claims—i.e., direct appeal—the CCA refused to consider Mr. Fratta's *pro se* pleadings. Only when Mr. Fratta had to proceed *pro se* anyway, and the claims he wanted to raise *pro se* were no longer cognizable, did the Texas habeas court grant his request to file *pro se* pleadings.  If this account is accurate, the injustice seems obvious and the equitable powers of Rule 60(b) should be deployed.

### 3. The nature and strength of Mr. Fratta's insufficiency of the evidence and fatal variance claims militate in favor of reconsidering the procedural default.

The nature and strength of Mr. Fratta's underlying claims are further reasons to reopen the judgment. *See Seven Elves*, 635 F.2d at 402 (weighing whether "there is merit in the movant's claim" among factors favoring reopening judgment). Defendants have a fundamental right, guaranteed by the Fifth, Sixth, and Fourteenth Amendments, to know the charges against them. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation"). A defendant may be convicted only upon proof by sufficient evidence that they committed the offenses on which a Grand Jury returned an indictment.  *Jackson v. Virginia*, 443 U.S. 307, 314 (1979). These fundamental rights were violated in Mr. Fratta's case.

11

The violations of these rights, moreover, is overlain with misconduct. The indictment that the Grand Jury returned leading up to Mr. Fratta's second trial stated, in all counts, that Mr. Fratta shot the victim. The State knew this was false; the State's theory at Mr. Fratta's second trial was the same as at the first, namely that Mr. Fratta hired Joseph Prystash and Howard Guidry to do the shooting. The Grand Jury was either given false information or else went along with the State's strategy of indicting Mr. Fratta as the principal, only to spring a law of parties charge to surprise Mr. Fratta at the end of trial. Either way there was an abuse of the Grand Jury system that resulted in jury instructions so confused that the State could not prove the charges ultimately given to the jury.

At the charging conference before jury deliberations, prosecutors should not have been able to add new theories of capital murder by adding a law of parties charge. Those new theories may have fit the evidence introduced at trial, but they did not appear in the indictment. Indeed, the disconnection between the offenses in the jury charge and the proof at trial was so stark that the usual complaints that the State "piled inference on inference" or that the state's evidence amounted to a scintilla, but not proof beyond a reasonable doubt, are not necessary. The failure is very much a matter of logic, as follows:

Based on the charge, the jury had to find Mr. Fratta solicited Mr. Prystash to shoot the victim for remuneration or shoot the victim as he committed burglary. There was evidence he intended to remunerate Mr. Prystash for shooting the victim, but no evidence he aided or abetted Mr. Prystash to commit burglary. In fact, the State's theory and evidence was that Mr. Prystash **neither** shot the victim **nor** burgled her home.  That means Mr. Fratta could not be convicted of the substantive offense, only with an attempt, an offense with which he was not charged and which does not, under Texas law, carry the death penalty.

The other theory on which the trial court instructed the jury was that Mr. Fratta solicited Mr. Guidry to commit the same offenses, i.e., solicitation murder and burglary murder. The State's

theory was that Mr. Guidry shot the victim.  However, Mr. Fratta did not solicit Mr. Guidry. There was no evidence that Mr. Fratta realized that Mr. Guidry existed or Mr. Prystash was dealing with any other person. The State tried to introduce evidence that Mr. Guidry received a gun as payment, but the trial court excluded this testimony, then struck the count that alleged Mr. Guidry received a gun as payment. Most importantly, there was no evidence that anyone else, including Mr. Prystash, offered Mr. Guidry money as remuneration, as alleged in the jury's charge. The State tried to introduce evidence that after the murder Mr. Prystash went to the gym to get money from Mr. Fratta in order to pay Mr. Guidry for murder. 27 RR 92. However, the trial court only allowed the state to introduce testimony that Mr. Prystash went to the gym to meet Mr. Fratta. 27 RR 93. The trial court also excluded testimony that Mr. Fratta was going to pay money to Mr. Prystash, as well as testimony that Mr. Prystash was going to split money from Mr. Fratta or pay Mr. Guidry out of his own pocket. Finally, there was some evidence that Mr. Prystash aided or abetted Mr. Guidry in burglary, but no evidence that Mr. Fratta aided either Mr. Prystash or Mr. Guidry to commit a burglary offense or intended that anyone commit burglary.

Given the history of this case (particularly the fact that Mr. Prystash's and Mr. Guidry's confessions incriminated Mr. Fratta but were excluded because of police misconduct), there may be a sense that Mr. Fratta is guilty of a serious crime that the State could have proved if it had pursued a different theory.  But that is for a jury to decide based on sufficient evidence rightly received at a trial. Indeed, to permit the State to carry out a death sentence based on assumptions rather than a jury's proper verdict would constitute the type of manifest injustice that threatens the integrity of the legal system.

**B.  Recent Supreme Court authority justifies reviving Mr. Fratta's Rule 59(e) motion.**

When this Court denied relief and a certificate of appealability, ECF No. 80, it stated that it could not "consider the merits of claims one and two" because the hybrid representation bar was

adequate and independent, and Mr. Fratta was unable to overcome the state procedural bar by showing cause and prejudice or a miscarriage of justice. *Id.* at 30. Nevertheless, this Court conducted what it called an "alternate review" of the merits of these claims, *id.* at 64-75, and stated it "would deny" the claims "if" the court were able to review the merits, *id.* at 72, 75. On October 13, 2017, Mr. Fratta, through undersigned counsel, filed a notice of appeal and request for COA.  ECF No. 84. On October 16, 2017, Mr. Fratta mailed a timely *pro se* motion to alter or amend the judgment *pro se. See* ECF No. 87. In the motion, Mr. Fratta asked the court to reconsider errors in both its procedural dismissal of claims one and two, and in its "alternate review" of the merits of those claims. Mr. Fratta argued:

1. Mr. Fratta's insufficiency claim and variance claims should not be defaulted because he abandoned his efforts to proceed hybridly and instead attempted to proceed *pro se*, without counsel. *Id.* at 3.

2. That refusal to recognize a meritorious insufficiency claim constitutes a miscarriage of justice. *Id.* at  4.

3. The evidence was insufficient to convict for the offenses charged in the indictment. *Id.* at 5-7.

This Court struck the motion for reconsideration without ruling on its contents. *See* ECF No. 90.

At the time this Court struck Mr. Fratta's motion, under Fifth Circuit law, this Court was required to treat Mr. Fratta's timely motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) the same as it would a motion to reopen the judgment under Fed. R. Civ. P. 60. *Williams v. Thaler*, 602 F.3d 291, 302-04 (5th Cir. 2010). Under that law, this Court was required to determine that a Rule 59(e) motion, like a Rule 60 motion, attacking the merits of a district court's denial of habeas relief constituted a "second or successive" habeas corpus application subject to the "gatekeeping" provisions under 28 U.S.C. § 2244(b). *Id.*

However, a significant change in law has occurred which—combined with the several other additional extraordinary circumstances alleged in this Motion—should cause this Court to reopen its judgment and consider Mr. Fratta's arguments first alleged in his Rule 59(e) motion. The Fifth Circuit

rule that previously prevented this Court from reaching the meritorious arguments raised in Mr. Fratta's Rule 59 motion represents a "procedural defect" capable of correction through this Rule 60 motion.

*Banister v. Davis*, 140 S. Ct. 1698 (2020), significantly changed the law with respect to Rule 59 motions. In *Banister*, a Texas habeas petitioner filed a timely Rule 59 motion following the judgment denying his habeas petition. *Id.* at 1704. He appealed the judgment within 28 days of the denial of his Rule 59 motion. *Id.* Applying its circuit rule, the Fifth Circuit dismissed his appeal of the judgment as untimely, because it decided his Rule 59 motion was a successive application attacking the judgment under 28 U.S.C. § 2244(b), and the purported Rule 59 motion thus did not toll the petitioner's time to file his appeal under Federal Rule of Appellate Procedure 4. *Id.*

The Supreme Court reversed, holding that a Rule 59(e) motion may never count as a "second or successive application" under 28 U.S.C. § 2244(b). *Id.* at 1702. The Court reasoned that a Rule 59 motion is "part and parcel of the first habeas proceeding." *Id.* The Court located the historical origins of Rule 59 in a court's common-law power to alter or amend judgments within the same "term of court" in which the judgment issued. *Id.* at 1706 (citing *Browder v. Dir., Dep't Corrs. of Ill.*, 434 U.S. 257, 270-71 (1978)). The rule historically applied with equal force to habeas cases. *Id.* at 1707.

The Court concluded that the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, which imposed new restrictions on review of "second or successive applications," 28 U.S.C. § 2244(b), had not altered this historical understanding. *Id.* at 1707-08. In fact, the Court concluded that permitting a Rule 59 motion from a habeas judgment serves several valuable purposes that reinforce the AEDPA. A Rule 59 motion "briefly suspends finality to enable a district court to fix any mistakes and thereby perfect its judgment before a possible appeal." *Id.* at 1708. Even short of fixing mistakes, Rule 59 motions "give habeas courts the chance to clarify their reasoning or address arguments (often made in less-than-limpid *pro se* petitions) passed over or misunderstood before." *Id.*

These purposes aid, rather than detract, from AEDPA's purpose of streamlining federal habeas review. *Id.*

In light of *Banister*, this Court should equitably consider the legal arguments Mr. Fratta made in support of his Rule 59 motion and reconsider its determination that Mr. Fratta's claims lack merit.

### C.  This motion should not be reclassified as a successive petition.

Mr. Fratta's request to reopen his judgment under Rule 60(b)(6) is a "true" Rule 60 motion, not a successive petition subject to the restrictions of 28 U.S.C. § 2244(b).

In *Gonzalez v. Crosby*, the Supreme Court stated that certain motions to reopen a judgment raised under Federal Rule of Civil Procedure 60 should be treated as successive applications under the AEDPA. The Court held that a claim that "attacks not the substance of the federal court's resolution of a claim on the merits, but [a] defect in the integrity of the federal habeas proceeding," was not a successive application within the meaning of 28 U.S.C. § 2244(b). *Gonzalez*, 545 U.S. at 532.

The Fifth Circuit has found Rule 60(b) motions were not successive applications because they attacked procedural defects that affected the integrity of the federal habeas proceeding. *E.g.*, *Clark v. Davis*, 850 F.3d 770, 779-80 (5th Cir. 2017) (attacking federal habeas counsel's conflict of interest); *Crutsinger v. Davis*, 929 F.3d 259, 265 (5th Cir. 2019) (attacking denial of pre-petition investigative funding under 18 U.S.C. § 3599(f)); *United States v. McDaniels*, 907 F.3d 366, 370 (5th Cir. 2018) (attacking denial of request for an evidentiary hearing).

Petitioner's motion properly attacks two procedural defects—the first relating to the enforcement of the state's procedural bar and the second relating to the Fifth Circuit's prior practice of treating Rule 59 challenges as successive, which foreclosed this Court from reconsidering its merits analysis pursuant to a timely Rule 59 motion. As in *Crutsinger* and *McDaniels*, the fact that the district court reached the merits of Mr. Fratta's claims does not alter this analysis; this Court principally

16

resolved Mr. Fratta's claims on non-merits grounds and a procedural defect undermined the integrity of the Court's "alternate" merits analysis.

## **<u>CONCLUSION</u>**

These premises considered, Mr. Fratta respectfully requests this Court reopen his habeas judgment and allow for further consideration of his meritorious claims.

Respectfully submitted,

<u>/s/ James Rytting</u>
JAMES RYTTING
State Bar No. 24002883
819 Lovett Boulevard
Houston, Texas 77006
Tel. (713) 655-9111
Fax (713) 655-9112


MAUREEN FRANCO
Federal Public Defender
Western District of Texas
TIVON SCHARDL
Chief, Capital Habeas Unit

<u>/s/ Joshua Freiman</u>
JOSHUA FREIMAN
Assistant Federal Public Defender
NY Bar No. 5353545
Federal Bar No. 3342395
919 Congress, Suite 950
Austin, Texas 78701
Tel. 737-207-3007
Fax 512-499-1584


Counsel for Petitioner

October 12, 2020

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), counsel for Petitioner has conferred with Ellen Stewart-Klein, counsel for Respondent, who is authorized to represent that Respondent opposes the relief sought in this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of October 2020, I electronically filed the foregoing Motion to Reopen Judgment with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to the following:

Ellen Stewart-Klein
Edward Marshall
Office of the Attorney General of Texas
300 W 15th St., 8th Floor
Austin, TX 78701
512-936-1400
Email: Ellen.Stewart-Klein@oag.texas.gov

/s/ Joshua Freiman
Joshua Freiman